Joshua H. Haffner, SBN 188652
jhh@haffnerlawyers.com
Trevor Weinberg, SBN 330778
tw@haffnerlawyers.com
Samantha Salas, SBN 367563
sc@haffnerlawyers.com
**HAFFNER LAW PC**
15260 Ventura Blvd., Suite 1520
Sherman Oaks, California 91403
Tel: (213) 514-5681
Fax: (213) 514-5682
Attorneys for Plaintiffs and the Putative Class

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LESLIE TENNEY, an individual; NHU-HA THAN, an individual,

Plaintiffs,

v.

WESTCHESTER FIRE INSURANCE COMPANY; INDEMNITY INSURANCE COMPANY OF NORTH AMERICA; ACE AMERICAN INSURANCE COMPANY; HEALTHY PAWS PET INSURANCE LLC; and DOES 1 through 10, inclusive,

Defendants.

**Case No. 8:25-cv-02186-MRA (JDEx)**
Hon. Mónica Ramírez Almadani

**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**

**(1) BREACH OF CONTRACT;**

**(2) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; and**

**(3) VIOLATION OF THE UNFAIR COMPETITION LAW, BUS. & PROF. CODE § 17200 ET SEQ.**

**DEMAND FOR TRIAL BY JURY**

Complaint Filed: August 15, 2025
Removed: September 26, 2025
Trial Date: None Set

Plaintiffs Leslie Tenney and Nhu-Ha Than (aka Nikki Than) ("Plaintiffs") bring this First Amended Class Action Complaint against defendants Westchester Fire Insurance Company, Indemnity Insurance Company of North America, ACE American Insurance Company, Healthy Paws Pet Insurance LLC, and Does 1 through 10 (collectively "Defendants"), and allege the following:

## NATURE OF THE ACTION

1. This is a California class action for breach of contract, insurance bad faith, and unfair business practices against Defendants arising out of its unlawful conduct in overcharging for pet insurance sold through Healthy Paws Pet Insurance.

2. Defendants, who are part of the Chubb Insurance family of companies, offer an insurance product called the Healthy Paws Pet Insurance Policy. In California, the Healthy Paws Pet Insurance Policies were initially issued and underwritten by Indemnity Insurance Company of North America and ACE American Insurance Company. They specifically provided that monthly premiums could only be changed "to reflect changes in the costs of veterinary medicine," and that the policy term is "continuous until cancelled." Defendants also filed documents with the California Department of Insurance ("CDI") stating that the pet's age factor at "policy inception will not change through the life of the pet as long as it is continuously insured under the policy (including any rewrite of the policy)," and that the Healthy Paws Pet Policies are "written on a continuous until cancelled basis."

3. Although Plaintiffs and Class members did not cancel their Healthy Paws Pet Policies underwritten by Defendants Indemnity Insurance Company of North America or ACE American Insurance Company, beginning in October 2019 and continuing through 2020, Defendants had these policies rewritten at time of renewal under the name of Defendant Westchester Fire Insurance Company. The original Healthy Paws policies and the Healthy Paws policy issued by Defendant Westchester were identical or virtually identical, as written. However, the new and apparently identical Westchester policies had a hidden, substantially increased premium cost.

4. Defendants never cancelled the original policies. Each policy states that it "is

continued until cancelled, and will renew automatically each month as long as premium payments are current," and that, other than for nonpayment, the insurer "may cancel this policy by providing you at least ninety (90) days written notice." No Defendant gave that notice. Instead, Defendants told policyholders that they were "amending and replacing your policy," and that "[r]est assured that your pet remains enrolled with Healthy Paws." The Westchester declarations pages carried the same Healthy Paws policy numbers, the same pet policy IDs, the same pet policy effective dates, and the same "Continuous until Cancelled" policy term as the policies they replaced. Defendants later described the change as one in which the policyholder's "continuous policy coverage was converted from your previous insurance company to the Westchester Fire Insurance Company."

5. The frozen pet age factor was the defining feature of the product. ACE told the CDI that its rating plan deliberately departed from the competitor program it copied, so that "[t]he pet age factors will apply at the new business pet age and will not increase over the life of the pet." Westchester nevertheless priced the rewritten policies with an "Age at Anniversary" factor that increases every year as the pet ages. In 2025 alone, the Age at Anniversary factor applied to Plaintiff Tenney's cat rose from 3.865 to 9.035, and her noticed monthly premium rose from $104.79 to $351.61.

6. Plaintiffs do not challenge any rate approved by the CDI. The ACE and IINA rating plans, including the frozen pet age rule, were approved when Plaintiffs' policies were issued, and they remained on file and approved with the CDI, alongside Westchester's plan, throughout the transition and for years afterward. The question this case presents is which approved rating plan governs a contract that was never cancelled and was rewritten. That is a question of contract and of the application of approved rates.

7. The CDI did not decide that question. The CDI approved Westchester's program in 2018 after Westchester represented that the program was "for new business only" and that it was "not moving existing policyholders to the new program." Seven months later, Westchester reversed course and itself proposed moving the in-force ACE and IINA business into Westchester. The CDI's own analyst described that filing as "the filing that CHUBB proposes to

transition business currently written in ACE American Insurance Company and Indemnity Insurance Company of North America into Westchester Fire," and no CDI objection, letter, or note in the 2018 or 2019 filings directs that consolidation. The CDI accepted the resulting one-page rule filing, which stated that in-force ACE and IINA business would be "transitioned" to Westchester. The CDI recorded that "Rate data does NOT apply to filing." Nothing in that filing mentioned cancellation, the policies' ninety-day notice requirement, the frozen pet age rule, or the age factor that would be applied to transitioned pets.

8. Defendants have substantially and unlawfully increased Plaintiffs and Class members monthly premiums, disregarding their representations, contractual promises, and rate filings, which required that monthly premiums only be increased based changes in the cost of veterinary care, that the pet age factor not change from policy inception, including for any rewrite of the policy, and that coverage is continuous until cancelled.

9. As a result of Defendants' unlawful conduct, Plaintiffs and class members have been substantially damaged, including through premium overcharges by Defendants. Plaintiffs bring this action on behalf of themselves and all others similarly situated for compensatory and other damages, restitution, and injunctive relief.

## JURISDICTION AND VENUE

10. Plaintiffs filed this action in the Superior Court of California, County of Orange, on August 15, 2025, Case No. 30-2025-01504386-CU-CO-CXC. Defendants removed the action to this Court on September 26, 2025. Defendants invoked this Court's jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The acts and omissions complained of in this action took place, in whole or in part, in the State of California. Venue is proper in this District and the Southern Division under 28 U.S.C. § 1441(a), because this action was removed from the Superior Court for the County of Orange, and Plaintiff Than resides in Orange County.

## PARTIES

11. Plaintiff Leslie Tenney was, at all relevant times is, a resident and citizen of the State of California, resident of Oakland.

12. Plaintiff Nhu-Ha Than (aka Nikki Than) was, at all relevant times is, a resident and

citizen of the State of California, resident of County of Orange.

13. Defendant Westchester Fire Insurance Company ("Westchester") is a business entity licensed to do, and is doing, business in the States of California. Plaintiff is informed and believes, and on that basis alleges, that Defendant is, among other things, a pet insurer. Plaintiff is informed and believes, and on that basis alleges, that Defendant Westchester is the successor-in-interest to the insurance policies issued to Plaintiffs and Class members by Defendants Indemnity Insurance Company of North America, and/or ACE American Insurance Company.

14. Defendant Indemnity Insurance Company of North America ("IICNA") is a business entity licensed to do, and is doing, business in the States of California. Plaintiffs are informed and believe, and on that basis allege, that Defendant is, among other things, a pet insurer.

15. Defendant ACE American Insurance Company ("ACE") is a business entity licensed to do, and is doing, business in the States of California. Plaintiff is informed and believes, and on that basis alleges, that Defendant is, among other things, a pet insurer.

16. Defendants Westchester, IICNA, and ACE shall collectively be referred to as "Insurer Defendants."

17. Defendant Healthy Paws Pet Insurance LLC ("Healthy Paws") is a business entity that is headquartered in Washington. Defendant Healthy Paws is licensed to do, and is doing, business in California. Plaintiff is informed and believes, and on that basis alleges, that Defendant is, among other things, the marketer and administrator of the pet insurance policies at issue in this action. At all relevant times through approximately May 2024, Healthy Paws acted as the Insurer Defendants' agent in marketing and administering the policies. The Insurer Defendants' own policyholder disclosures describe Healthy Paws as "the managing general underwriter." Defendants' correspondence to policyholders, including in 2025, is issued under the name "Healthy Paws, a Chubb Company."

18. Plaintiff is informed and believes and on that basis alleges, that all Defendants are part of the Chubb Insurance group of companies. Defendants engaged in a joint venture and/or civil conspiracy in connection with issuance of Healthy Paws Pet Insurance policies, as alleged

herein.

19. Plaintiffs are currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants sued herein under the fictitious names Does 1 through 10, inclusive, and therefore sue such defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of said fictitiously named defendants when their true names and capacities have been ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by the Class.

20. Plaintiffs informed and believes and thereon alleges that all defendants, including the fictitious Doe defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, alter egos, partners and/or joint venturers and/or employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent authorization and ratification of their co-defendants; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contradiction with other allegations.

## FACTS COMMON TO ALL CAUSES OF ACTION

21. Plaintiffs were insured under Healthy Paws Pet insurance policies sold and issued by Defendants.

**The Marketing And Administration Of Healthy Paws Policies.**

22. Defendant Healthy Paws is the marketer and administrator for all pet insurance policies at issue in this action issued by the Defendant insurers. Defendant Healthy Paws acts as the Insurer Defendants' agents in marketing and administering the policies at issue. Defendant Healthy Paws operates the website www.healthypawspetinsurance.com, where it markets Healthy Paws pet insurance.

23. Defendant Healthy Paws marketed and represented that the pet insurance policies would be lifetime policies for Plaintiffs and class members' insured pets. Among other things,

Defendants website stated "We cover your pet from head to paw - for a lifetime."

24. Defendants represented that policy premiums would only go up slightly. Defendant Healthy Paws represented on its website's Frequently Asked Questions (FAQs) and sample policy that premiums will only increase based on increased cost of veterinary care. Defendant Healthy Paws made these misrepresentations consistently on its website from at least 2011 through at least 2018. Plaintiffs are informed and believe, and on that basis allege, that Defendant Healthy Paws shares in commissions, premiums, and/or profits from Healthy Paws pet policies it sells.

**Plaintiffs' Exposure To And Reliance On Defendants' Representations.**

25. Plaintiff Tenney purchased her policy through the Healthy Paws website in or about June 2013. At the time Plaintiff Tenney purchased the policy, Healthy Paws repeatedly told her that they would not increase the cost of premiums based on the age of her pets. She relied on those statements in purchasing the policy and in keeping it in force thereafter.

26. Plaintiff Than purchased her policy through the Healthy Paws website in or about August 2016. Before purchasing, Plaintiff Than reviewed Healthy Paws' website, including the section stating premiums would only increase based on the increased cost of veterinary care. She also spoke with Healthy Paws Client Services who told Plaintiff Than "Rest assured that we will never adjust or increase your premiums… just because your pup is getting older." Healthy Paws Client Services continued to tell this to Plaintiff Than throughout the life of the policy, including via email on June 30, 2017. She relied on those statements in Healthy Paws' website as well as from the representative in purchasing the policy and in keeping it in force thereafter.

**Common Insurance Policy Provision Regarding Changing Monthly Premium And Continuous Coverage.**

27. Each of the policies issued by the Insurer Defendants to Plaintiffs and Class members were called Healthy Paws Pet Insurance policies, with substantially same terms. They provide coverage for medical care by veterinarians.

28. Each of the policies contained the following provision:

> MONTHLY PREMIUM: Your monthly premium is set forth on your declarations page. ***Monthly premiums may change for all policyholders***

> ***to reflect changes in the costs of veterinary medicine***. We will notify you at least sixty (60) days in advance of such change. (Emphasis added)

29. Plaintiffs and class members' Healthy Paws pet insurance policies provide on the declarations page that the Policy Term is "Continuous until Cancelled," and that the "Lifetime Limit" is "Unlimited per pet."

30. The body of each policy provides:

> Premium is payable monthly by Direct Debit or by charge to your credit card, according to the option selected by you on the application. This policy is continued until cancelled, and will renew automatically each month as long as premium payments are current.

31. The policies define "Coverage Term" as "[a] twelve (12) month period that begins with the effective date of coverage and continues for each twelve (12) month period thereafter." The policies do not contain an expiration date. The signature page of Plaintiff Than's policy states a "Policy Period" of "8/29/2016 to 8/29/2041."

32. The policies limit the insurer's right to cancel. Other than for nonpayment of premium, the insurer "may cancel this policy by providing you at least ninety (90) days written notice."

33. Plaintiffs are informed and believes, and on that basis alleges, that Defendants breached these policy provisions in relation to Plaintiffs and Class members policies. Defendants breached the Healthy Paws pet insurance policies issued to Plaintiffs and class members by increasing monthly premiums based on unauthorized factors other than veterinarian care, including but not limited to, claims costs and expenses. Defendants also breached Plaintiffs and class members policies by purporting to place Plaintiffs and class members in a policy issued by Defendant Westchester, with undisclosed materially different premium prices, although the original policies had not cancelled.

**Defendants' Failure To Properly Apply Its Filed Rates**

34. Defendants Indemnity Insurance Company of North America and/or ACE American Insurance Company were the pet insurers who initially underwrote and issued the Healthy Paws Pet Insurance policies to Plaintiffs and Class members.

35. Plaintiff is informed and believes, and on that basis alleges, that Defendant

Indemnity Insurance Company of North America filed its 2015 Healthy Paws Rating Manual with the California Department of Insurance ("CDI") stating as follows:

> "The covered pets age is determined by its date of birth. . . The Pet Age Factor applied at the policy inception will not change through the life of the pet as long as it is continuously insured under the policy (including any rewrite of the policy)."

36. In 2017, IINA amended its rating manual (SERFF Tracking No. ACEH-131054142, CDI File No. 17-3611). The amended rule kept the frozen age. "The age of the pet at the policy inception will be used to determine the age factor through the life of the pet as long as it is continuously insured under the policy (including any rewrite of the policy). The pet age used for rating will not change from the age at the policy inception for a continuously insured policy." In the same filing, IINA explained to the CDI that it viewed the frozen age factor "to be similar to life insurance," because "life insurance costs are related to age of entry," and "a pet entering their 5th year of coverage with us is in fact less costly than a new pet entering at age 5."

37. Plaintiffs are informed and believe, and on that basis allege, that Defendant Indemnity Insurance Company of North America filed with the CDI in May 2015 its Healthy Paws Underwriting Guidelines in 2015, a document stating as follows:

> **Policy Term**
> The Pet Health Insurance policy is written on a continuous until cancelled basis.

38. Plaintiffs are informed and believe, and on that basis allege, that Defendant ACE American Insurance Company filed rates in California in or about October 2012 stating as follows:

> "The covered pets age is determined by its date of birth. . . The Pet Age Factor applied at the policy inception will not change through the life of the pet as long as it is continuously insured under the policy (including any rewrite of the policy)."

39. ACE's explanatory memorandum to the CDI (SERFF Tracking No. PERR-128748772, CDI File No. 12-8028) stated that ACE's rates and rules were "a me-too of Markel American Insurance Company (CDI#: 10-2837) with the following deviation to assist with the competitiveness of this program. The pet age factors will apply at the new business pet age and

will not increase over the life of the pet." The Markel program ACE copied applied pet age factors annually on the policy anniversary date. ACE rejected that approach.

40. Under ACE's approved manual, the highest pet age factor for any pet, at any age, was 2.00. A pet first insured at age one carried a pet age factor of .963 for as long as it remained insured.

41. Defendant Ace American's filed with California as its Healthy Paws Underwriting Guidelines in 2012, a document stating as follows:

> **Policy Term**
> The Pet Health Insurance policy is written on a continuous until cancelled basis.

42. Defendants Indemnity Insurance Company of North America and ACE American Insurance Company also both filed the policy form that insured Plaintiffs, stating that "Monthly premiums may change for all policyholders to reflect changes in the costs of veterinary medicine."

43. California law requires an insurer to charge the rates approved by the Insurance Commissioner for the policies it issues. The premium for each ACE and IINA policy was therefore set by the rating plan ACE or IINA had on file and approved with the CDI. Those approved rating rules, including the frozen pet age rule, are part of the bargain between the insurer and the insured. They define the premium the policyholder agreed to pay and the insurer agreed to accept. Each pet's age factor was fixed at inception, as a term of the contract, for the life of the pet.

44. The frozen pet age factor was the core of the bargain. It is what made lifetime pet insurance affordable as a pet aged. A policyholder who enrolled a young pet paid premiums for years while the pet was healthy and inexpensive to insure, in exchange for a premium that would not be repriced for age when the pet became old and was most likely to need coverage.

45. The ACE and IINA rating plans remained on file and approved with the CDI, alongside Westchester's plan, throughout the period in which Defendants moved the policies to Westchester and for years afterward. ACE and IINA did not seek to withdraw them until 2024,

five years after the transition began, and then only after a CDI analyst wrote that "Chubb have to withdraw the Pet Health programs which are on longer writing in ACE American Ins Co and Indemnity Ins Co of NA." (SERFF Tracking Nos. ACEH-133665486, ACEH-134128283, ACEH-134128313.)

46. The withdrawals did not change any existing policy. The CDI "Acknowledged" those withdrawals. It did not approve any change to the terms of any existing policy. ACE's withdrawal filing stated that ACE had no in-force policies. That statement rested on Defendants' own position that the policies ended when they were moved to Westchester, which Plaintiffs dispute. Withdrawing a rating manual for business an insurer no longer writes is not a cancellation of any policy, does not satisfy the policies' ninety-day written notice requirement, and does not amend the frozen pet age term of any policy in force. That term continues to govern Plaintiffs' and Class members' premiums today.

47. Beginning on or about October 20, 2019, and continuing through approximately October 2020, Defendant Westchester took over policies for Defendants Indemnity Insurance Company of North America, and/or ACE American Insurance Company at time of renewal. Plaintiffs are informed and believe, and on that basis allege, that Plaintiffs and Class members policies were not cancelled when taken over by Defendant Westchester, they were just rewritten using Westchester's name. Plaintiffs are informed and believe, and on that basis allege, that Defendant Westchester filed the policy form that insured Plaintiffs, containing the same provision that "Monthly premiums may change for all policyholders to reflect changes in the costs of veterinary medicine."

**The CDI Approved Westchester's Program For New Business Only, After Westchester Told The CDI It Was Not Moving Existing Policyholders.**

48. In September 2018, Westchester filed a new pet insurance program with the CDI (SERFF Tracking No. ACEH-131634684, CDI File No. 18-4792). Westchester's rating plan introduced an "Age at Anniversary" factor, defined as "the difference between the pet's date of birth and the annual anniversary date of the original policy inception," which "is determined and applied annually." ECF 29-3 at 59. Westchester's plan also included an "Age at Inception

Factor," which "will not change as long as the pet is continuously insured under the policy (including any rewrites of the policy)." ECF 29-3 at 66.

49. During the review of that filing, the CDI asked Westchester, "You have advised this new submission is for new business only. Please advise if you plan to move the policy holders from you current program to this new program in the future." ECF 29-3 at 16. Westchester answered, "No, we are not moving existing policyholders to the new program." ECF 29-3 at 25; SERFF ACEH-131634684, Response dated 11/08/2018.

50. Westchester repeatedly assured the CDI that existing ACE and IINA policyholders would be unaffected. It wrote, "As the proposed program is for new business only, this filing will not impact current policyholders in the older programs." ECF 29-3 at 28. It wrote, "The proposed program will only be offered to new business only. The other two programs will only be writing renewal business after the proposed program is approved." ECF 29-3 at 32. It explained that the same thing had happened before. "[A]fter the Indemnity Insurance Company of North America (IICNA) program was approved in 2015, all new business was written under IICNA and the older ACE American program only wrote renewal business from that point forward." *Id.*

51. The CDI did not direct Westchester to consolidate the three programs. The CDI asked for a side-by-side comparison of the coverages of the three programs "so we can determine there are meaningful coverage differences." ECF 29-3 at 33-34. After reviewing the comparison, the CDI wrote that it did "not note any significant coverage differences between the three programs," but that "[i]n light of our interest to have more Pet Insurance coverage available in California, we will approve your filing, however in the future any new programs will have to contain either mutually exclusive guidelines or significant coverage differences." ECF 29-3 at 33; SERFF ACEH-131634684, Note to Filer dated 11/28/2018. The CDI approved the Westchester program on November 29, 2018. ECF 29-3 at 11.

**The 2019 "Transition" Rule Filing Did Not Approve Cancelling The Policies, Did Not Address The Frozen Pet Age Rule, And Contained No Rate Data.**

52. On June 13, 2019, approximately seven months after telling the CDI it was "not moving existing policyholders," Westchester submitted a rule filing (SERFF Tracking No.

ACEH-131976407, CDI File No. 19-2234). The filing stated that Westchester would be "transferring business written in ACE American Insurance Company and Indemnity Insurance Company of North America to Westchester Fire Insurance Company (Westchester) upon their annual anniversary date." The CDI's own analyst described it as "the filing that CHUBB proposes to transition business currently written in ACE American Insurance Company and Indemnity Insurance Company of North America into Westchester Fire." ECF 29-3 at 236.

53. The rule Westchester filed is one paragraph. It states that "[c]urrent inforce pet health insurance business written in ACE American Insurance Company and Indemnity Insurance Company of North America will be transitioned into Westchester Fire Insurance Company upon their policy anniversary," and that "[f]or the first-year only, any rate increase on a transitioned policy will be capped at 50%." ECF 29-3 at 219.

54. The 2019 filing did not say that the ACE or IINA policies would be cancelled. It did not mention the policies' ninety-day written notice requirement for cancellation. It did not mention the ACE and IINA rule that the pet age factor "will not change through the life of the pet as long as it is continuously insured under the policy (including any rewrite of the policy)." It did not ask the CDI to withdraw, amend, or override that rule as to any policy. It did not identify the age factor that would be applied to any transitioned pet.

55. The CDI recorded that "Rate data does NOT apply to filing." ECF 29-3 at 208. The CDI's approval letter, dated August 14, 2019, states that "[o]nly the change(s) specifically indicated in the application set forth above . . . is (are) approved," that "[n]othing in this letter shall constitute approval of any other application," and that the approval "does not constitute an approval of underwriting guidelines nor the specific language, coverages, terms, covenants and conditions contained in any forms." ECF 29-3 at 210.

56. The CDI could not, and did not purport to, cancel any insurance contract, excuse any insurer from the cancellation terms of its own policies, or relieve ACE or IINA of the frozen pet age term on which their policies were priced.

57. Defendants have asserted that the CDI requested that the programs be consolidated. The only source for that assertion is Defendants' own counsel, in an email written in

August 2020, more than a year after the 2019 filing. ECF 29-3 at 237. No CDI objection, letter, or note in the 2018 or 2019 filings directs consolidation. In May 2024, when a CDI analyst reviewed Westchester's book, the CDI asked Chubb, "Why did you combine them into one book under Westchester Fire Ins Co?" (SERFF Tracking No. ACEH-133665486, CDI File No. 23-1365.)

**Defendants Never Cancelled The ACE And IINA Policies. They Rewrote Them.**

58. Defendants have described the transition as a "rollover," and have stated that "policies written under ACE American Insurance Company were transferred to Westchester Fire Insurance Company at policy renewal." No Defendant sent Plaintiffs or Class members a notice of cancellation. No Defendant gave Plaintiffs or Class members the ninety days' written notice the policies require for cancellation.

59. Instead, approximately fifty to sixty days before each policy anniversary, Defendants sent a form "Policyholder Communication." ECF 29-2, Exs. 4, 8. It stated, "we are amending and replacing your policy as of the policy anniversary date." It stated, "Rest assured that your pet remains enrolled with Healthy Paws and will continue to receive the same excellent service you have been accustomed to receiving." It stated that "[t]he new policy contains many of the coverages as your former policy," and it listed the only changes it described as waiting period language, pre-existing cruciate ligament language, and shipping and mailing cost exclusion language. Id.

60. The Policyholder Communication did not disclose that Westchester would price the policy using an Age at Anniversary factor that increases every year. It did not disclose that Defendants would no longer honor the rule that the pet age factor would not change through the life of the pet. It did not say that the policy was being cancelled. It stated only that "some pet parents will experience increases in the cost of their monthly premium." Id.

61. The Policyholder Communication was headed "IMPORTANT INFORMATION ABOUT THE UPCOMING EXPIRATION OF YOUR PET INSURANCE POLICY," and listed an "Expiration Date." That statement was false. The policies had no expiration date. They were "Continuous until Cancelled" and renewed "automatically each month." Plaintiff Than's own policy stated a "Policy Period" running to August 29, 2041, more than twenty years after the

"Expiration Date" Defendants gave her. The "Expiring Policy no." listed in the notice was the insurer's internal account number, not the Healthy Paws policy number shown on the declarations page.

62. The Westchester declarations pages issued in 2020 carried forward the defining terms of each ACE and IINA policy. They bore the same Healthy Paws policy number, the same pet policy ID, the same pet policy effective date, the same "Continuous until Cancelled" policy term, and the same unlimited lifetime limit. Plaintiff Tenney's Westchester declarations page bears her ACE policy number, 152704, and her pet's original pet policy effective date of June 25, 2013. ECF 29-2, Ex. 1. Plaintiff Than's Westchester declarations page bears her IINA policy number, 404051, and her pet's original pet policy effective date of August 29, 2016. ECF 29-2, Ex. 5. Westchester's 2021 anniversary endorsement to Plaintiff Than's policy was issued under policy number 404051.

63. Defendants have since admitted that coverage was continuous. On June 6, 2025, responding to Plaintiff Tenney's inquiry about her premium, Defendants wrote, "As you may recall, on June 25, 2020, your continuous policy coverage was converted from your previous insurance company to the Westchester Fire Insurance Company."

64. Plaintiffs read and relied on the 2020 Policyholder Communication's statements that their pets "remain[ed] enrolled with Healthy Paws," that the only coverage changes were the clarifications it listed, and that their policies were "expiring." Had Defendants disclosed that their policies were not expiring, that the frozen pet age term would no longer be honored, and that their premiums would be repriced every year by pet age, Plaintiffs would have objected and looked for coverage elsewhere.

65. Plaintiffs are informed and believe, and on that basis allege, that Plaintiff and class members policies underwritten by Defendant Westchester, for the same pet that had been insured by Defendants Indemnity Insurance Company of North America or ACE American Insurance Company, are a continuation and/or rewrite of the same Healthy Paws policies covering the same pets. Because the ACE and IINA policies were never cancelled in compliance with their terms, they remain in force. In the alternative, the Westchester policies are a continuation and rewrite of

them.

66. Plaintiffs are informed and believes, and on that basis alleges, that for Plaintiffs and class members' policies that were continued or rewritten by Defendant Westchester from Defendants Indemnity Insurance Company of North America or ACE American Insurance Company, the rate filing that must be applied is that "[t]he Pet Age Factor applied at the policy inception will not change through the life of the pet as long as it is continuously insured under the policy (including any rewrite of the policy)."

67. Plaintiffs are informed and believe, and on that basis allege, that Defendants have failed to apply their filed rates to Plaintiffs and Class members, resulting in overcharges. Specifically, Defendants have increased pet age rate and/or factor, failing to apply the filed rates that state it will not change from policy inception through the life of the pet. Defendants have also failed to apply the policy term that monthly premiums can only change based on changes in the cost of veterinary care. Plaintiffs are informed and believe, and on that basis allege, that Defendants have failed to properly apply their rates in other ways to be proven at trial.

68. Since each policy's 2019 or 2020 anniversary, Westchester has recalculated the premium at every policy anniversary using its Age at Anniversary factor and its Frequency Age at Anniversary factor. Both increase as the pet ages. Westchester has applied an Age at Inception factor of 1.000 to Plaintiff Tenney's pet, which has no effect on the premium. As a result, the pet's age at each anniversary, not its age at inception, drives the premium.

69. Each anniversary repricing is a separate and independent application of the Age at Anniversary factor to a new coverage term. Defendants have told the CDI that "all of our policies are 1 month policies," and that "policies are renewed annually when the age at anniversary of the pet changes." At each anniversary, Defendants issue a new "Pet Health Policy Changes" endorsement stating that "[t]he premium was adjusted due to the anniversary adjustment." Each monthly premium charged at the repriced amount is a separate overcharge.

70. Plaintiffs do not challenge the reasonableness of any filed rate, but assert Defendants failed to properly apply the filed rates and/or breached the insurance policies, as alleged herein. Plaintiffs do not contend that any approved rate is excessive, inadequate, or

unfairly discriminatory. Plaintiffs contend that the approved ACE and IINA rating plans, including the frozen pet age rule, govern the premiums for policies that were never cancelled and were rewritten, and that Defendants applied a different rating plan to those policies.

71. Defendants conduct in breaching the policy terms and/or failing to apply their filed rates, to massively overcharge premiums on long-standing policyholder whose Healthy Paws pet insurance policies pre-date the Westchester take over, is an unfair practice designed to make pet insurance unaffordable as pets get older, and are more likely to need it, such that Class members are required to abandon coverage for their pet.

**Plaintiff Tenney's Healthy Paws Policy For Herbie The Cat**

72. Plaintiff Tenney has been insured and owned pet insurance for Plaintiff's cat, Herbie, from Defendants since approximately 2013. Plaintiff Tenney's pet insurance policy covering Herbie was initially issued by ACE American Insurance Company with a policy effective date of June 25, 2013, policy number 152704, and pet policy ID 152704-1, and the monthly premium was $19.99. Herbie was born in May 2012 and was approximately one year old at inception. Under ACE's approved rating plan, Herbie's pet age factor was fixed at .963 for the life of the pet. (Attached as Exhibit 1, and incorporated herein by reference, is the declarations page and policy for Plaintiff Tenney's Healthy Paws policy issued by ACE American Insurance Company.)

73. Plaintiff Tenney received the Policyholder Communication dated May 1, 2020. ECF 29-2, Ex. 4. Plaintiff Tenney did not receive any notice of cancellation, and did not cancel her policy. Effective June 25, 2020, Plaintiff Tenney's Healthy Paws pet insurance policy covering Herbie was continued and/or rewritten under Westchester's name, on a Westchester declarations page bearing policy number 152704, pet policy ID 152704-1, and pet policy effective date June 25, 2013, at a monthly premium of $38.87. ECF 29-2, Exs. 1, 3. (Attached hereto as Exhibit 2, and incorporated herein by reference, the declarations page and policy for Plaintiff Tenney's Healthy Paws policy issued by Defendant Westchester.) Plaintiff Tenney's Healthy Paws pet insurance policy covering Herbie was not cancelled when it was rewritten or continued with Westchester's name.

74. Plaintiff Tenney is informed and believes, and on that basis alleges that the Westchester policy issued to Plaintiff Tenney was the same or similar form as the ACE American Insurance Company policy issued to Plaintiff Tenney.

75. At each anniversary since June 25, 2020, Westchester repriced Plaintiff Tenney's policy using the Age at Anniversary factor. On June 25, 2021, the monthly premiums under the policy increased from $38.81 to $58.30. On June 25, 2022, the premiums increased from $58.30 to $72.77. On June 25, 2023, the monthly premiums increased from $72.77 to $87.33. For the policy term beginning June 25, 2024, Westchester charged $104.79 per month, using an Age at Anniversary factor of 3.865 and a Frequency Age at Anniversary factor of 2.801.

76. On April 23, 2025, Defendants notified Plaintiff Tenney that her monthly premium would increase from $104.79 to $351.61 beginning June 25, 2025. Defendants identified the primary rating factors driving that increase, including "an increase in Age at Anniversary Factor (3.865 to 9.035)" and "an increase to Frequency Age at Anniversary Factor (2.801 to 3.501)." Defendants applied an Age at Inception factor of 1.000.

77. Unable to afford $351.61 per month, Plaintiff Tenney reduced her coverage to keep Herbie insured. Effective June 25, 2025, her deductible increased from $250 to $750 and her reimbursement level decreased from 90% to 80%, at a monthly premium of $210.23. Effective July 25, 2025, her reimbursement level decreased again to 70%, at a monthly premium of $187.00.

78. Plaintiff Tenney's monthly premiums increased more than changes in the cost of veterinary care and more than if the same pet age factor was used, at every anniversary since June 25, 2020, including but not limited to, a substantial increase noticed in 2025, from $104.79 to $351.61 per month, such that Plaintiff Tenney is now being charged an exorbitant amount to keep her Healthy Paws policy in place, in breach of contract.

79. The increases applied to Plaintiff Tenney's policy breached the policy because it is more than the cost of changes to veterinary care. The increases also failed to properly apply Defendants filed rates that "[t]he Pet Age Factor applied at the policy inception will not change through the life of the pet as long as it is continuously insured under the policy (including any

rewrite of the policy)."

**Plaintiff Than's Healthy Paws Policy For Summer The Dog**

80. Plaintiff Than has been insured and owned pet insurance from Defendants since approximately 2016. Plaintiff Than's pet insurance policy covered her dog, Summer, born in May 2016, and was issued by Indemnity Insurance Company of North America with a policy effective date of August 29, 2016, policy number 404051, and pet policy ID 404051-1. The monthly premium was $55.35. The signature page states a "Policy Period" of "8/29/2016 to 8/29/2041." Summer was less than one year old at inception, and under IINA's approved rating plan her pet age factor was fixed at her age at inception for the life of the pet. (Attached as Exhibit 3, and incorporated herein by reference, is the declarations page, signature page, and policy for Plaintiff Than's policy issued by Indemnity Insurance Company of North America.)

81. Plaintiff Than received the Policyholder Communication dated June 30, 2020. ECF 29-2, Ex. 8. Plaintiff Than did not receive any notice of cancellation, and did not cancel her policy. Effective August 29, 2020, Plaintiff Than's Healthy Paws pet insurance policy covering Summer was rewritten and/or continued under Westchester's name, on a Westchester declarations page bearing policy number 404051, pet policy ID 404051-1, and pet policy effective date August 29, 2016, at a monthly premium of $76.36. ECF 29-2, Exs. 5, 7. Plaintiff Than's Healthy Paws pet insurance policy covering Summer was not cancelled when it was rewritten or continued with Westchester's name.

82. Plaintiff Than is informed and believes, and on that basis alleges that the Westchester policy issued to Plaintiff Than was the same or similar form as the Indemnity Insurance Company of North America policy issued to Plaintiff Than, including the term about changing monthly premiums based on changes to veterinary care. (Attached as Exhibit 4 is a true and correct copy of the Westchester declarations page and the Westchester Healthy Paws pet insurance policy that was issued as a rewrite and/or replacement for Plaintiffs and class members prior Healthy Paws pet insurance policies.)

83. At each anniversary since August 29, 2020, Westchester repriced Plaintiff Than's policy using the Age at Anniversary factor. Her monthly premium increased from $76.36 to

$101.11 on August 29, 2021, to $114.22 on August 29, 2022, to $131.08 on August 29, 2023, to $150.53 on August 29, 2024, and to $344.89 on August 29, 2025.

84. Plaintiff Than's monthly premiums increased more than changes in the cost of veterinary care and more than if the same pet age factor was used, at every anniversary since August 29, 2020, including but not limited to, a substantial increase in 2025, from $150.53 to $344.89 per month, such that Plaintiff Than is now being charged an exorbitant amount to keep her Healthy Paws policy in place, in breach of contract.

85. The increases applied to Plaintiff Than's policy breached the policy because it is more than the cost of changes to veterinary care. The increases also failed to properly apply Defendants filed rates that "[t]he Pet Age Factor applied at the policy inception will not change through the life of the pet as long as it is continuously insured under the policy (including any rewrite of the policy)."

86. Each of Defendants' past and future premium or cost of insurance overcharges of Plaintiff and the class constitutes a separate breach of contract.

**Defendants' Concealment of Scope Of Increase In Premiums**

87. The nature of Defendants' conduct is such that Plaintiff and each member of the class would be unaware that Defendants were engaging in wrongdoing by charging inflated premiums. Defendants possess the actuarial information and equations underlying the computation of rates and charges for the Policies.

88. Defendants made it appear that the Healthy Paws policy issued by Defendants Westchester was a continuation of the Healthy Paws policy issued by the original underwriters. Thus, the change happened at policy renewal, they were still called Healthy Paws Pet Insurance policies, and the policies were same in appearance and language.

89. Defendants knew that changing Plaintiffs and Class members from their original underwriters into Healthy Paws pet insurance policies issued by Defendant Westchester would result in substantial premium increases. Thus, Defendants discussed with the CDI the significant premium effect this change in policy underwriters would have, but failed to disclose that fact to Plaintiffs. Defendants calculated an overall increase of 41.4% for the in-force book without a cap,

and calculated that 34% of ACE pets and 19% of IINA pets would require increases of 50% or more. To conceal this premium effect, Defendants obtained exceptions to the implementation of the full premium, to stagger the increase over multiple years, so that the full effect would not be realized. They did so without advising Plaintiffs and class members that the premiums in the first years after the Healthy Paws policy issued by Westchester had taken effect were not the actual premiums Plaintiffs and class members would ultimately pay, which were far higher.

90. On August 10, 2020, Fran Muldoon, of Chubb insurance group, wrote to the CDI regarding "transitioning renewals of pet insurance policies from ACE American Insurance Company . . . and Indemnity Insurance Company of North America . . . to WFIC." Mr. Muldoon requested a second exception so "the cap on premium increases be extended at 50% for another year of renewals." Mr. Muldoon stated "[t]here are 8,780 pets in California, that will have a greater than 50% increase in premiums, when renewed on or after October 20, 2020." Mr. Muldoon stated that "in the absence of a cap . . . these increases will not be well received by the pet parents and could result in many complaints to the CDI." ECF 29-3 at 233. Defendants also acknowledged that "[o]btaining coverage from another insurer may not be a realistic option" for pet parents "if their pets have preexisting conditions or are at an age that will likely not be covered by a new insurer." Id. Defendants did not disclose to Plaintiffs or class members these significant increases, or that they had requested exceptions so that the extent of the increases would be concealed for the first years after Westchester began underwriting the Healthy Paws Pet insurance policy.

91. Defendants continued to use the same language in the Healthy Paws policies issued by Westchester that "[m]onthly premiums may change for all policyholders to reflect changes in the costs of veterinary medicine," despite knowing this was false and untrue because Defendant Westchester's monthly premiums included additional, unauthorized factors. Defendants failed to fully disclose to Plaintiffs and Class members the actual factors that would be used to calculate monthly premiums at the time of transitioning Healthy Paws policies to be underwritten by Westchester.

92. Defendants sought to conceal that effect from Plaintiffs and Class members,

including by the following:

a. Obtaining undisclosed exceptions to the implementation of the full premium, to stagger the increase over multiple years, so that the full effect would not be realized;

b. Failing to disclose the substantial increases in premiums that would ultimately result from changing the Healthy Paws policy to being underwritten by Defendant Westchester;

c. Issuing the same Healthy Paws policy by Westchester, so that coverage looks identical and continuous, without disclosing the Westchester policy was materially different than the original policies with respect to premium cost;

d. Failing to disclose the additional, unauthorized factors used to increase premium costs under Defendant Westchester's policy;

e. Telling policyholders that their policies were expiring, when the policies had no expiration date and were continuous until cancelled;

f. Telling policyholders that their pets "remain[ed] enrolled" and that the only coverage changes were minor clarifications; and

g. Issuing annual endorsements stating only that "[t]he premium was adjusted due to the anniversary adjustment," without identifying the Age at Anniversary factor or disclosing that it was being applied in place of the frozen pet age factor.

93. Because of its superior knowledge of the computations, Defendant was aware that Plaintiffs and each member of the class did not know about the improper deductions. Defendants failed to disclose and/or concealed the factors Defendants used to determine the premiums, and that the Healthy Paws policy underwritten by Defendant Westchester was materially different than the original policies with respect to premium cost. Concealment of its conduct and/or failure to disclose its conduct to Plaintiff and the class constitutes fraudulent concealment and therefore tolls and/or estops Defendants from asserting the statute of limitations for Plaintiffs and proposed class members.

94. Plaintiffs are informed and believe, and on that basis allege, that Defendants first disclosed to policyholders that premiums may change based on the "age of pet" in a California

policyholder disclosure issued with 2025 anniversary renewals. Plaintiffs did not discover, and a reasonable policyholder would not have discovered, that Defendants had abandoned the frozen pet age term until Defendants disclosed the specific rating factors in 2025.

**Timeliness.**

95. Plaintiffs filed this action on August 15, 2025. Each anniversary repricing of each policy, and each monthly premium charged at a repriced amount, is a separate breach and a separate overcharge, and gives rise to a separate claim with its own limitations period. Plaintiffs and Class members seek recovery, at a minimum, for every premium charged on or after August 15, 2021, including the premiums set at the 2021, 2022, 2023, 2024, and 2025 anniversaries.

96. The repricing did not occur once in 2020. The 2020 transition imposed a capped first-year premium. Defendants then extended the cap to a second year. The uncapped effect of the Age at Anniversary factor was imposed in later anniversary terms, and the factor itself has increased at every anniversary as each pet aged. Plaintiff Tenney's Age at Anniversary factor more than doubled at the June 25, 2025 anniversary alone. Plaintiff Than's premium more than doubled at the August 29, 2025 anniversary alone.

97. Plaintiffs and class members have complied with each and every obligation and/or condition of the policies at issue, save those that Defendants have waived, forfeited, and/or are estopped from asserting.

## CLASS DEFINITIONS AND CLASS ALLEGATIONS

98. Plaintiffs bring this action on behalf of themselves, and on behalf of all others similarly situated, under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), and as members of the Class defined as follows:

> All persons in California who own, owned or are or were insured under a Healthy Paws pet insurance policy issued by Defendants Indemnity Insurance Company of North America or ACE American Insurance Company, which policy was rewritten, continued, transitioned, and/or reissued by Defendant Westchester Fire Insurance Company.

Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts

learned through discovery, legal arguments advanced by Defendants or otherwise.

99. Numerosity of the Class: Members of the Class are so numerous that their individual joinder is impracticable. Defendants' own filings state that the transitioned book included approximately 18,504 pets insured by ACE and 71,275 pets insured by IINA. The precise number of Class members and their addresses are known to Defendants or will be known to Plaintiffs through discovery. Class members may be notified of the pendency of this action by mail, electronic mail, the Internet, or published notice.

100. **Existence of Predominance of Common Questions of Fact and Law:** Common questions of law and fact exist as to all members of the Class. These questions predominate over any questions affecting only individual Class members. These common legal and factual questions include:

a. Whether Defendants overcharge for premiums for the Policies at issue.

b. Whether Defendants breached the policies by using factors other than the cost of veterinary care to increase monthly premiums;

c. Whether Defendants failed to apply their filed rates that the age factor applied at the policy inception will not change through the life of the pet as long as it is continuously insured under the policy (including any rewrite of the policy).

d. Whether Plaintiffs and class members policies were at anytime cancelled.

e. Whether Defendants gave the ninety days' written notice the policies require for cancellation;

f. Whether the ACE and IINA policies remain in force;

g. Whether Defendants failed to apply its filed policy terms to only change premiums based on increased costs of veterinary care.

h. Whether Defendant Westchester rewrote or took over the other Insurer Defendants Healthy Paws Pet Insurance Policies subject to the rate filing that the age factor applied at the policy inception will not change through the life of the pet (including for any rewrite of the policy).

i. Whether Defendants' statement that the policies were expiring was false or

misleading;

j. Whether Defendants misrepresented that insurance costs would only slightly increase based on cost of veterinary care.

k. Whether Defendants manner of charging for or calculating the cost of insurance is an unfair business practice;

l. Whether Defendants improperly use unauthorized factors in calculating the cost of insurance or premiums for the Policies;

m. Whether Defendants concealed the premium increases that would result from the change in policy underwriters.

n. The nature and extent of class-wide injury and the measure of damages for the injury.

101. **Typicality**: Plaintiffs' claims are typical of the claims of the members of the Class they represent because Plaintiffs, as policyholders of Defendants, were exposed and subjected to the same unlawful business practices as other class members by Defendants during the liability period. Plaintiffs and the members of the classes sustained the same types of damages and losses.

102. **Adequacy:** Plaintiffs are adequate representative of the Class they seek to represent because their interests do not conflict with the interests of the members of the classes Plaintiffs seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation and Plaintiffs intend to prosecute this action vigorously. The interests of members of each Class will be fairly and adequately protected by Plaintiffs and her counsel.

103. **Superiority and Substantial Benefit:** The class action is superior to other available means for the fair and efficient adjudication of Plaintiffs and the Class members' claims. The damages suffered by each individual Class member may be limited. Damages of such magnitude are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. Further, it would be virtually impossible for the Class members to redress the wrongs done to them on an individual basis. Even if members of the Class themselves could afford such individual litigation, the court system could not. Individualized litigation increases the delay and expense to all parties and the court system,

due to the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

104. The Class should also be certified because:

a. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for Defendants;

b. The prosecution of separate actions by individual members of the Class would create a risk of adjudication with respect to them, which would, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c. Defendants have acted or refused to act on grounds generally applicable to the Class, and/or the general public, thereby making appropriate final and injunctive relief with respect to the Classes as a whole.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(Against All Insurer Defendants)**

105. Plaintiffs re-allege, and incorporate by reference, the preceding paragraphs of this Complaint, as though fully set forth herein.

106. Plaintiffs and Class Members are owners under policies for which Defendants were paid consideration in the form of premiums. Plaintiffs, Class Members, and the policy owners faithfully performed all obligations required to be performed by them under the terms of the insurance contract Defendants issued for the benefit of Plaintiffs and Class members, except to the extent performance may have been excused by, among other things, Defendants' bad faith conduct and breach of the insurance policy

107. The contracts include the policy, the declarations pages, and the approved rating rules under which the premium for each policy was set, including the rule that the pet age factor applied at policy inception "will not change through the life of the pet as long as it is continuously

insured under the policy (including any rewrite of the policy)."

108. The Insurer Defendants, and Does 1-10, breached the terms of the insurance contract by overcharging for monthly premiums and/or the cost of insurance, including by increasing charges more than changes in the cost of veterinary care, increasing charges more than allowed if the pet age factor or rate is not changed from that used at the inception of the policy, increasing charges more than permitted even though the policies had not been cancelled, misstating the amount due to keep the policy in force, imposing a policy issued by Westchester in place of the original policy  although Plaintiffs and class members had not cancelled their original policies, and by forcing Plaintiffs and Class members to institute this litigation. Defendants' breaches of contract occurred in connection with the policies alleged in this action. The premium overcharges were for the monthly premiums and/or cost of insurance.

109. ACE and IINA breached the contracts. They purported to end the policies and replace them with Westchester policies without cancelling them, and without giving the ninety days' written notice the policies require for cancellation. Because the policies were not cancelled, they remain in force, and ACE and IINA remain bound by their terms. ACE and IINA further breached the contracts by causing Plaintiffs and Class members to be charged premiums above those permitted by the frozen pet age term on which the policies were priced.

110. In the alternative, the Westchester policies are a continuation and rewrite of the ACE and IINA policies, and Westchester succeeded to and assumed the obligations of those policies. Westchester breached the contracts by repricing the rewritten policies at every anniversary using an Age at Anniversary factor, in place of the pet age factor fixed at inception that governs the policies "through the life of the pet" and through "any rewrite of the policy." Westchester's own rating plan provides that the age factor fixed at inception "will not change as long as the pet is continuously insured under the policy (including any rewrites of the policy)."

111. Each anniversary repricing, and each monthly premium charged at a repriced amount, is a separate breach.

112. As a direct, proximate and legal result of Defendants' breach(es) of the contract, Plaintiffs and the Class have been, and continue to be, damaged in an amount to be proven at trial,

including but not limited to: Paying monies as a result of overcharges, including the difference between the premiums charged and the premiums permitted under the frozen pet age term; the value of coverage reduced in order to keep policies in force; loss of use of money, consequential damages including interest on monies Plaintiffs and the Class could and should have received promptly, but which they did not receive in a timely fashion as a result of Defendant's breach of contract, and other fees, expenses and costs to be proven at trial.

113. Plaintiff and the Class have also sustained other losses as a direct, proximate and legal result of Defendant's conduct, in an amount to be proven at trial

114. Plaintiffs and Class members are entitled to a declaration that their ACE and IINA policies were not cancelled, and that the premiums for their policies, whether issued in the name of ACE, IINA, or Westchester, are governed by the pet age factor fixed at each pet's inception.

## SECOND CAUSE OF ACTION
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
## (Against All Insurer Defendants)

115. Plaintiffs re-allege, and incorporate by reference, the preceding paragraphs of this Complaint, as though fully set forth herein.

116. The insurance policies identified in this action contained an implied covenant of good faith and fair dealing, whereby Defendants, and Does 1 through 10, agreed to perform their obligations under the policies in good faith, to deal fairly with Plaintiffs and Class members, and not to unreasonably deprive Plaintiffs and the Class of the benefits due under the insurance policy.

117. Defendants breached the implied covenant of good faith and fair dealing arising from the insurance contract by unreasonably overcharging for the Policies. A central benefit of the ACE and IINA policies was lifetime coverage at a premium that would not be repriced for the pet's age. The Insurer Defendants unfairly frustrated that benefit. They used a change of underwriter, which they described to policyholders as an amendment and replacement in which the pet "remains enrolled," as a device to escape the frozen pet age term, while avoiding the cancellation the policies require and the notice that cancellation would have given. In the

alternative, Defendants' conduct constitutes a tortious breach of the implied covenant.

118. Defendants continues to engage in unlawful, bad faith insurance practices. Such bad faith conduct constitutes a continuing tort which is causing Plaintiff and Class members continued damages.

119. Defendants engaged and continues to engage in a course of conduct to further its own economic interests in violation of its obligations to Plaintiff. This conduct includes, but is not limited to the conduct alleged in this complaint and the following:

A. Wrongfully overcharging for insurance;

B. Improperly using claims, expense and/or other unauthorized factors in cost of insurance rates and/or premium charges;

C. Forcing Plaintiff and Class members to retain counsel;

D. Failing to advise Plaintiff and Class members of applicable policy benefits;

E. Placing its own interests above the interests of Plaintiff.

F. Failing to disclose and/or concealing the premium increase that would result from changing underwriters for the Healthy Paws Pet Insurance policy;

G. Unreasonably interpreting the Policy and California law in a manner favorable to Defendant and unfavorable to Plaintiff.

H. Representing that the policies were expiring when they were not;

I. Repricing policies on aging pets that Defendants knew could not realistically obtain coverage elsewhere;

J. Plaintiff is informed, believes and thereon alleges, that Defendant has breached its duty of good faith and fair dealing owed to Plaintiff and Class members by other acts or omissions of which Plaintiff is presently unaware and which will be shown according to proof at the time of trial.

120. Without any reasonable basis for doing so, and with full knowledge and/or conscious disregard of the consequences, Defendants, and each of them, have failed and refused to act in good faith or act fairly towards Plaintiffs and Class members, and Defendants have, in

bad faith, failed and refused to perform their obligations under the insurance policies, and under the laws of the State of California. Defendants' conduct described herein constitutes a bad faith pattern and practice.

121. As a direct, proximate and legal result of said breaches of the covenant of good faith and fair dealing by Defendants, Plaintiffs and Class members have been, and continue to be, damaged, in an amount according to proof. Plaintiffs and Class members have been required to expend attorney's fees and costs in pursuing relief to which they are entitled as a matter of law. Pursuant to *Brandt v. Superior Court* (1985) 37 Cal.3d 813, Plaintiff s and the Class are entitled to attorney's fees and costs reasonably incurred to compel the payment of benefits due under the insurance policy.

122. As a direct, proximate and legal result of the wrongful conduct of Defendants, Plaintiff and Class members have sustained other economic damages, as set forth above, and other damages in an amount to be proven at trial.

123. On the basis of all of the facts alleged hereinabove, Defendants' conduct and actions were despicable, and were done maliciously, oppressively and fraudulently, with a willful and conscious disregard of Plaintiffs' and Class members' rights, thereby subjecting Plaintiff and Class members to unjust hardship and distress, entitling Plaintiffs and Class members to punitive damages under California Civil Code Section 3294. Defendants' officers, directors and managing agents were personally informed and involved in the decision-making process with respect to the misconduct alleged herein and to be proven at trial.

**THIRD CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION ACT**
**(Violation of California's Unfair Competition Law**
**Bus. & Prof. Code §§ 17200 *et seq.*)**
**(By Plaintiff Against All Defendants)**

124. Plaintiff re-alleges, and incorporates by reference, the preceding paragraphs of this Complaint, as though fully set forth herein.

125. Section 17200 of the California Business and Professions Code (the "UCL") prohibits any unlawful, unfair, or fraudulent business practices.

126. Through its action alleged herein, Defendants has engaged in unfair competition within the meaning of the UCL. Defendants' conduct, as alleged herein, constitutes unlawful, unfair, and/or fraudulent business practices under the UCL.

127. Defendants' unlawful conduct under the UCL includes, but is not limited to, violations of Insurance Code §§ 332 and 790.03(b), as well as Insurance Code § 1851, et seq., including section 1861.01(c), and related provisions regarding applying insurance filed rates. Defendants charged rates other than those that govern Plaintiffs' and Class members' policies.

128. Defendants' unfair conduct in violation of California Business & Professions Code section 17200, et seq. includes, but is not limited to, using undisclosed factors to overcharge for insurance, concealing the increase in premiums when the underwriter for the Healthy Paws policy was changed, and developing a scheme to issue policies under a new insurer's name, in order to increase charges on long standing policyholders with aging pets, and make the policies unaffordable. Defendants did so after telling the CDI that existing policyholders would not be moved.

129. Defendants' fraudulent conduct in violation of California Business & Professions Code section 17200, et seq. includes but is not limited to, misrepresenting that the premiums would only go up slightly, based on changes to cost of veterinary care, misrepresenting that the policies would be continuous and provide coverage for a pet's lifetime, misrepresenting in 2020 that the policies were expiring when they were not, representing that pets "remain[ed] enrolled" and that the only coverage changes were minor clarifications, and misleading and/or failing to disclose to Plaintiffs and the Class that the premium or cost of insurance calculation included the unauthorized factors used.

130. Healthy Paws participated in and is responsible for this conduct. Plaintiffs are informed and believe, and on that basis allege, that Healthy Paws prepared and sent the 2020 Policyholder Communications, the annual anniversary notices, and the endorsements, and marketed and administered the policies, as the Insurer Defendants' agent and managing general underwriter.

131. Plaintiffs reasonably relied on Defendants misrepresentations, omissions, and/or

other unfair, fraudulent, and unlawful conduct, and as a result lost money or property, including in the form of premiums for which they were overcharged.

132. Plaintiffs and the Class request that this court order that Defendants be required to provide restitution and/or disgorge the profits they have wrongfully obtained through the use of these unlawful, unfair or fraudulent practices, provide restitution, and that an injunction issue to correct the wrongful conduct and business practices alleged in this complaint

## PRAYER

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendants as follows:

A. For an order certifying the Class, appointing Plaintiffs as Class representatives, and appointing their counsel as Class counsel;

B. For general, compensatory damages, plus prejudgment interest and other damages according to proof;

C. For special and consequential damages;

D. For punitive and exemplary damages according to proof.

E. For a declaration that Plaintiffs' and Class members' ACE and IINA policies were not cancelled, and that the premiums for their policies are governed by the pet age factor fixed at each pet's inception;

F. For restitution and/or restitutionary disgorgement of all profits Defendants obtained as a result of unlawful, unfair, and/or fraudulent business practices;

G. For an appropriate injunction, including an injunction requiring Defendants to calculate premiums for Class members' policies in accordance with the pet age factor fixed at each pet's inception;

H. For costs of suit herein, and attorney's fees as permitted by law;

I. For pre-judgment interest as provided for by applicable law, and

J. For such further relief as the Court may deem just and proper.

DATED: October 13, 2026

**HAFFNER LAW PC**

By: /s/ Trevor Weinberg

Joshua H. Haffner
Trevor Weinberg
Samantha Salas
Attorneys for Plaintiffs and the Putative Class

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury for themselves and the Class members on all claims so triable.

DATED: October 13, 2026 **HAFFNER LAW PC**

By: /s/ Trevor Weinberg
Joshua H. Haffner
Trevor Weinberg
Samantha Salas
Attorneys for Plaintiffs and the Putative Class

# EXHIBIT 1

healthypaws PET INSURANCE

ACE American Insurance Company

# Pet Health Insurance Policy Declarations Page

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE TO PROVIDE YOU WITH THE INSURANCE AS STATED IN THIS POLICY.

## Policy Information

| | |
|---|---|
| **Policy Number:** 152704 | **Policy Effective Date:** 6/25/2013 12:01AM at the address of the Pet Parent shown below. |
| **Policy Term:** Continuous until Cancelled | **Lifetime Limit:** Unlimited per pet |

## Pet Parent Information

| | |
|---|---|
| **Name:** Leslie Tenney | **Phone:** 510 914-2117 |
| **Street Address:** 318 Athol Ave. | **City:** OAKLAND |
| **State:** CA | **Zip Code:** 94606 |

## Pet Schedule

| | | | | | |
|---|---|---|---|---|---|
| **Pet Name:** Herbie | **Pet Policy ID:** 152704-1 | **Type:** Cat | **Breed:** Domestic Short Hair | **Date of Birth:** 5/2012 | **Pet Sex:** Male |
| **Pet Policy Effective Date:** 6/25/2013 12:01AM at the address of the Pet Parent shown above. | | **Coinsurance (Your Share):** 10% | **Reimbursement (Our Share):** 90% | **Annual Deductible:** $250 | **Monthly Premium:** $19.99 |
| **Waiting Period:** 15 days from the Pet Policy Effective Date for accidents and illness **and** 12 months from the Pet Policy Effective Date for illness related to hip dysplasia. | | | | | |

## Payment Information

| | |
|---|---|
| **Total Monthly Premium:** | $19.99 |

## Forms and Endorsements Attached

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue: Pet Health Insurance Policy Form PI-39279 (11/12); Pet Health Insurance Notice PI-39285 (11/12); ACE INA Privacy Statement PI-19668 (02/06); Trade or Economic Sanctions Endorsement ALL-21101 (11/06); ACE Producer Compensation Practices & Policies ALL-20887 (10/06); Signature Page CC-1K11g (01/11); OFAC Advisory Notice to Policyholders ILP-001 (01/04)

**These declarations, together with the Common Policy Conditions and Coverage Form(s) and any Endorsements(s), complete the above numbered policy.**

[signature]

Jennifer Sherwood

healthypaws® PET INSURANCE

ACE American Insurance Company

# Pet Health Insurance Policy

Please read your Pet Health Insurance Policy carefully to determine the parties' rights and duties and what is and is not covered. Some provisions in the policy limit or restrict coverage.

Throughout this policy, the words **you** and **your,** refer to the policyholder (**Pet Parent**) shown in the Declarations Page.

The words **we, us and our,** refer to the company providing this insurance.

Words and phrases that appear in **bold type** have special meaning found in Section V. Definitions.

## I. INSURING AGREEMENT

**We** rely on the statements **you** made in the application. Upon **your** payment of the premiums when due, **we** will provide **coverage** as specifically described in this **policy** for **your pet** as shown on the **declarations page**.

Benefits are subject to terms, conditions, limitations and exclusions of this **policy** and to **your** responsibility for the **coinsurance and deductible. Coverage** is in effect at the time and date shown on the **declarations page** subject to the waiting periods described in **II. EXCLUSIONS & LIMITATIONS 1) b,.1) c.** and **1) d.**

1) **WE COVER**: Reimbursement of the cost incurred by **you** for **medically necessary veterinary treatment** recommended by **your veterinarian** for **conditions** covered by this **policy.** These costs will be covered when **your pet:**

   a. develops an **illness,** or

   b. has an **injury** as a result of an **accident;**

   during the **coverage term.**

   This **policy** shall not cover amounts charged by the treating veterinary clinic that are greater than the treating veterinary clinic's standard or published charges.

2) **LIFETIME LIMIT**: The maximum amount **you** may claim while **coverage** is in force with respect to any one **pet** for **veterinary treatment** over the lifetime of that **pet.** The Lifetime Limit is shown on the **declarations page**. Subject to the maximum lifetime limit, there are no limits per claim or per year.

3) **COINSURANCE**: The portion **you** are required to pay for **your pet's veterinary treatment. Your pet's coinsurance** amount is shown on the **pet schedule** of the **declarations page.**

4) **DEDUCTIBLE**: **Your pet's deductible** is shown on the **pet schedule** of the **declarations page. Your pet's deductible** shall apply once per **coverage term.**

5) **MONTHLY PREMIUM**: **Your** monthly premium is set forth on **your declarations page**. Monthly premiums may change for all policyholders to reflect changes in the costs of veterinary medicine. **We** will notify **you** at least sixty (60) days in advance of such change.

6) **CHANGES TO YOUR COVERAGE**: **Your coverage, coinsurance, and deductible** will not change due to **your pet's** claims experience.

# II. EXCLUSIONS & LIMITATIONS

## 1) GENERAL EXCLUSIONS

**We** do not cover:

a. **Veterinary examination fees.**

b. **Injury** from an **accident** that occurs within the first fifteen (15) days following the **pet policy effective date.**

c. **Illness** that occurs or recurs within the first fifteen (15) days following the **pet policy effective date.**

d. **Illness** related to hip dysplasia that occurs or recurs within the first twelve (12) months following the **pet policy effective date.**

## 2) PRE-EXISTING CONDITIONS

**We** do not cover **pre-existing conditions.**

**Pre-existing conditions** means:

a. **illness** or the recurrence of any **illness** or **condition** which first occurred or displayed any signs and/or symptoms consistent with the stated **illness** or **condition** prior to the **pet policy effective date**;

b. an **injury** or recurrence of an **injury** that occurred prior to the **pet policy effective date**; or

c. any **condition** or complication resulting from an **illness** or **injury** that occurred prior to the **pet policy effective date.**

## 3) PREVENTIVE CARE EXCLUSIONS

**We** do not cover:

a. **Spaying** and **neutering**.

b. Preventive healthcare including **vaccinations** or titer test, flea control, heartworm **medication**, de-worming, nail trim, and grooming.

c. Parasite control including but not limited to internal and external parasites for which readily available prophylactic treatments are available.

d. **Dental health care**, however if injury to teeth is caused by an accident, **we** do cover the cost of extraction and/or reconstruction of damaged teeth.

e. Anal gland expression.

## 4) OTHER EXCLUSIONS

**We** do not reimburse the costs, fees or expenses associated with:

a. **Injury** or **illness** due to any intentional, neglectful or preventable act, including organized dog fighting, by **you** or a member of **your** household;

b. Elective procedures, cosmetic procedures, preventive procedures including but not limited to:

   1. tail docking;
   2. ear cropping;
   3. de-clawing;
   4. micro-chipping;
   5. dew claw removal; or

6. ear cleaning;

c. Boarding or transport expenses;

d. **Conditions** arising from a specific activity if the same or a similar activity occurred prior to the **pet policy effective date** and displayed the propensity for the activity to recur and cause **injury** or **illness** to **your pet**;

e. Pre-existing cruciate ligament problems to one leg as respects the cost of future treatment for problems of the other leg;

f. Diseases preventable by vaccines and prophylactic **medications** (such as heartworm, lice, internal parasites and fleas);

g. Complications of **conditions** excluded or limited by this **policy**;

h. Abnormalities where **clinical symptoms** were apparent prior to the **pet policy effective date**. This includes **conditions** that are detectable by a routine physical exam by **your veterinarian**;

i. Claims in any way arising from the lack of use and/or implementation of preventive healthcare products and/or methods when such products and/or methods would be in accordance with generally accepted veterinary standards. Routine healthcare includes: **vaccinations**, flea control, heartworm **medication**, de-worming, dental care, ear plucking, grooming, and prudent regular care;

j. Special diets, **pet** foods, vitamins, supplements, grooming, nail trims, shampoo and bathing (including medicated baths);

k. Any claim for loss from a nuclear incident as defined in the Nuclear Liability Act, nuclear explosion or contamination by radioactive material;

l. **Conditions** arising from any specific activity if the same or similar activity occurs after **you** have received written notice from **us** regarding the specific activity;

m. Experimental or investigational treatment or medicine;

n. Breeding or **conditions** relating to breeding, whelping, and queening;

o. **Diagnostic tests** for **conditions** excluded by this **policy**;

p. **Diagnostic tests** due to complications of **conditions** excluded or limited by this **policy**;

q. **Conditions** caused by war or war activities whether war be declared or not. War activities include civil war, insurrection, rebellion, or revolution or any act or **condition** incident of any of the foregoing;

r. Feeding, housing or exercise;

s. Behavioral modification, training, therapy or **medications** for behavioral modification.

**5) LIMITATIONS**

a. A **pet** less than six (6) years of age on the date of enrollment must have undergone a complete **clinical examination.** The exam must have taken place either in the twelve (12) months prior to the **pet policy effective date**, or within fifteen (15) days following the **pet policy effective date**. A **pet** six (6) years of age or greater on the date of enrollment must have undergone a complete **clinical examination** within thirty (30) days prior to the **pet policy effective date,** or within fifteen (15) days following the **pet policy effective date**. **Your** failure to submit **your pet** to a complete **clinical examination** may void the **policy**. If the **policy** is voided, the **policy** premium will be refunded.

b. For **pets** six (6) years of age or greater on the date of enrollment, no **coverage** shall apply for **illness** related to hip dysplasia.

c. For **working pets**, no **coverage** shall apply for any **condition** resulting from activities related to racing, breeding, law enforcement, guarding or for any commercial use.

d. **We** will not make any payments for any claims for which **you** are entitled to be paid under any other insurance except for any additional sum which is payable over and above such other insurance.

## III. GENERAL CONDITIONS

1) Premium is payable monthly by Direct Debit or by charge to **your** credit card, according to the option selected by **you** on the application. This **policy** is continued until cancelled, and will renew automatically each month as long as premium payments are current. When **you** have not paid the premium, **we** may cancel this **policy. We** will let **you** know at least twenty (20) days before the date cancellation takes effect. No coverage will be provided for any claim with a date of **veterinary treatment** between the premium due date and the cancellation date, unless the premium payments are current.

2) **You** may cancel **your policy** by notifying **us** in writing via regular mail, fax or email at least fourteen (14) days in advance of **your** next premium payment.

3) **You** must be the owner of the **pet(s).** If the **pet** owner dies, becomes unable to care for the insured **pet(s),** or passes the ownership of the insured **pet(s),** the **coverage** will continue without interruption, if approved in writing by **us,** subject to all other terms and conditions of this **policy.**

4) A **pet** is covered under this **policy** only while the **pet** is in the United States of America, or temporarily away in Canada.

5) **You** must agree to implement all reasonable means possible in the care and protection of **your pet. You** further agree to protect the **pet** from aggravation and/or recurrence of the **injury** and/or **illness** after occurrence.

6) This **coverage** is not transferable to other **pets.** All new **pets** are subject to a new application and your monthly payment will increase.

7) **You** are entitled to increase **your pet's deductible** level and/or increase **your pet's coinsurance** amount at any time. This request must be made in writing and will become effective the month following approval by **us. You** may apply to lower **your pet's deductible** level and/or decrease **your pet's coinsurance** amount provided that **your pet** has not previously filed a claim with **us.** This request must be in writing and will become effective the month following approval by **us.**

8) Notice of loss must be given by either **you** or **your** agent.

9) The loss is payable within sixty days after completion of the claim form, unless applicable state law provides for a shorter period.

10) In order to process a claim, **you** must allow **us** to contact **your** present and previous **veterinarian(s)** and provide **us** with the necessary authority to obtain any information **we** may require. In the event information relating to the history of the **pet** is missing or incomplete, the claim will not be processed. **You** must also agree to submit the **pet** to examination, if **we** require, by a **veterinarian we** select.

11) In the event of any disagreement between **you** and **us** with regards to a claim, the matter will be referred to **our veterinarian.** If the matter is not resolved, an independent third party **veterinarian** shall be appointed by **us.** This independent third party **veterinarian's** decision shall be final and binding on all parties.

12) Every action or proceeding against **us** for the recovery of any claim under or by virtue of this contract is absolutely barred unless commenced within one year after the loss or damage occurs or unless state law requires a longer period.

## IV. ADDITIONAL CONDITIONS

1) **MISREPRESENTATION AND FRAUD** – This **policy** will be voided if **you** have concealed or misrepresented any material fact or circumstance concerning this insurance or the **pet(s)** covered. **We** do not provide **coverage,** for an insured who has intentionally concealed or misrepresented any such facts or circumstances before or after a loss.

2) **CANCELLATION**

a. **We** may cancel this **policy** if **we** do not receive a monthly premium from **you** when the premium is due. In such a case a written notice will be sent to **you** at **your** last email address known to **us.** We will provide at least (20) days

notice of our intent to cancel. The notice will be in accordance with the provisions of **III. GENERAL CONDITIONS** 1). Otherwise, **we** may cancel this policy by providing **you** at least ninety (90) days written notice.

b. **You** may cancel this **policy** at any time by notifying **us** in writing via regular mail, fax or email. This is in accordance with the provisions of III. **GENERAL CONDITIONS** 2).

3) **STATE LAW** – When this **policy's** provisions are in conflict with the statutes of the state in which this **policy** is issued, the provisions are amended to conform to such statutes.

4) **ENTIRE CONTRACT** – This **policy**, the **Declarations Page**, and any attached endorsement contain all the agreements between **you** and **us**.

5) **FREE LOOK PERIOD** - If **you** are not satisfied with this **policy** within thirty (30) days of the **Policy Effective Date**, **you** may cancel **your** insurance. **We** will refund **your** premium in full, as long as **you** have not submitted a claim.

## V. DEFINITIONS

The following defined words or phrases in the **policy** are printed in bold type and have the following meanings, unless a different meaning is described in a particular coverage or endorsement.

1) **Accident.** An unexpected and unintended event causing **injury** to **your pet**.

2) **Clinical Examination.** A thorough examination performed by a licensed and registered **veterinarian** encompassing all body systems of the **pet**. Examination can also be referred to as "full physical, physical consultation, full examination or veterinary examination."

3) **Clinical Symptoms.** Any manifested anomaly in, or deviation from the regular healthy state or function of a **pet**, including behavioral traits. Symptoms include any anomaly that is readily detectible by a thorough and complete **clinical examination.**

4) **Coinsurance. Your** portion of the cost of insured **veterinary treatment for your pet** before any **deductible** is applied. **Your pet's coinsurance** amount is shown as "Your Share" on the **pet schedule** of the **declarations page**.

5) **Condition.** Any manifestations of **clinical symptoms** consistent with a diagnosis or diagnoses, regardless of the number of incidents or areas of the body affected.

6) **Coverage.** The insurance protection described in this **policy** form and on the **declarations page.**

7) **Coverage Term.** A twelve (12) month period that begins with the effective date of **coverage** and continues for each twelve (12) month period thereafter.

8) **Declarations Page.** A written document comprising part of this **policy**, which identifies the insured, the **policy** number, and the insured **pet schedule** with the **coverage** options selected and Lifetime Limit provided.

9) **Deductible.** The amount **you** must first pay with respect to the cost of insured **veterinary treatment** for **your pet** after **your pet's coinsurance** portion has been applied.

10) **Dental Health Care.** The regular care required to maintain dental hygiene for **your pet.** This includes brushing, scaling, polishing, extractions and reconstructions.

11) **Diagnostic Tests.** Tests used to determine the overall health of **your pet. Diagnostic tests** can be used as a way to detect certain abnormalities. It can also validate the current health of **your pet**, or help to evaluate an older **pet** more thoroughly before problems surface.

12) **Hospitalization.** Charges for boarding **your pet** at a veterinary clinic as required by your **veterinarian** to deliver nursing care, administer **medication** to or monitor **your pet**.

13) **Illness.** Sickness, disease and any changes to **your pet's** normal healthy state; any **condition** other than **your pet's** normal healthy state.

14) **Injury(ies).** Physical harm or damage to **your pet** arising from normal activity or an **accident.**

15) **Medically Necessary.** Medical services, supplies or treatments provided by a **veterinarian** to treat covered **pets** which are:

a. consistent with symptoms or diagnosis;

b. appropriate and meet generally accepted veterinary practice standards;

c. not primarily for the convenience of the **pet parent**, **your veterinarian** or other providers; and

d. consistent with the most appropriate supply or level of services which can safely be provided to the **pet**.

16) **Medication.** Any veterinary recommended **medications** prescribed by **your veterinarian** and approved by the Food and Drug Administration (FDA) for veterinary use.

17) **Neutering.** Orchidectomy, or surgical removal of the testicles.

18) **Pet** or **Pets.** A domestic cat or dog that is owned for companionship or as a help dog, not owned for commercial reasons. Commercial reasons include, but are not limited to, a **racing dog**.

19) **Pet Parent.** The owner of the **pet,** including owner's spouse or partner.

20) **Pet Policy Effective Date.** 12:01 a.m. of the day following the date you enroll **your pet**, as shown on the **pet schedule** of the **declarations page**, subject to the waiting periods as defined in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.,** and **1) d.**

21) **Pet Schedule.** The table shown on the **declarations page** that identifies the **pet policy effective date**, policy number and **coverage** options related to a specific insured **pet.**

22) **Policy.** The terms and conditions and most recent **declarations page** that includes any endorsements that apply.

23) **Policy Effective Date.** 12:01 a.m. of the day following the date Shown in the Declarations, subject to the waiting periods as defined in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.,** and **1) d.**

24) **Pre-existing conditions** means:

a. **illness** or the recurrence of any **illness** or **condition** which first occurred or displayed any signs and/or symptoms consistent with the stated **illness** or **condition** prior to the **pet policy effective date;**

b. an **injury** or recurrence of an **injury** that occurred prior to the **pet policy effective date**; or

c. any **condition** or complication resulting from an **illness** or **injury** that occurred prior to the **pet policy effective date.**

25) **Racing Dog.** A dog, which is owned and maintained for the purpose of competing in organized races or speed contests.

26) **Spaying.** Ovariohysterectomy, or resection of the ovaries and uterus.

27) **Supplies.** Any item that is **medically necessary**, as determined by the **veterinarian**, that is safe and effective for its intended use, and that omission would adversely affect the insured **pet**.

28) **Surgery (ies).** Procedure(s) that treat diseases or **injuries** by operative manual and instrumental treatment.

29) **Vaccination.** The administration of an industry-recognized commercial vaccine by a registered licensed **veterinarian.** The vaccine must be in accordance with the manufacturer's recommendations, following a complete **clinical examination,** for prevention of disease.

30) **Veterinarian.** A properly licensed and registered **veterinarian** in active practice in the area where **your pet** is treated or examined. **Veterinarian** shall not include **you** or a member of **your** immediate family.

31) **Veterinary Examinations Fees.** Fees charged for the professional opinion of a **veterinarian.** Also referred to as consultation, examination, referral, and recheck fees.

32) **Veterinary Treatment** means:

a. X-rays;

b. Laboratory and **diagnostic tests;**

c. **Medication;**

d. **Surgeries;**

e. **Supplies;**

f. **Hospitalization;**

g. Euthanasia; and

h. Nursing care;

provided by a licensed **veterinarian** and their staff under direct supervision.

33) **Working Pets.** Any **pet** involved in activities other than companionship or helping, including, but not limited to, racing, breeding, law enforcement, guarding or for other commercial use.

34) **Your Pet.** The dog or cat named in the **pet schedule** of the **declarations page**.

# EXHIBIT 2

healthypaws® PET INSURANCE

**WESTCHESTER FIRE INSURANCE COMPANY**

**436 Walnut Street**
**P.O. Box 1000**
**Philadelphia, PA 19106**
**215-640-1000**

## PET HEALTH INSURANCE POLICY DECLARATIONS PAGE

In Return For The Payment Of The Premium, And Subject To All The Terms Of This Policy, We Agree To Provide You With The Insurance As Stated In This Policy.

| **Policy Information** | |
|---|---|
| Policy Number: I22135831 | Policy Effective Date: 6/25/2020 12:01AM at the address of the Pet Parent shown below |
| Policy Term: Continuous until Cancelled | Lifetime Limit: Unlimited per pet |

| **Pet Parent Information** | |
|---|---|
| Name: Leslie Tenney | Phone: (510) 914-2117 |
| Street Address: 318 Athol Ave. | City: OAKLAND |
| State: CA | Zip Code: 94606 |

| **Pet Schedule** | | | | | |
|---|---|---|---|---|---|
| Pet Name: Herbie | Pet Policy ID: 152704-1 | Type: Cat | Breed: Domestic Short Hair | Date of Birth: 5/2012 | Pet Sex: Male |
| Pet Policy Effective Date: 6/25/2013 12:01AM at the address of Pet Parent shown above | | Coinsurance (Your Share): 10% | Reimbursement (Our Share): 90% | Annual Deductible: $250 | Monthly Premium: $58.30 |
| Waiting Period: 15 days from the Pet Policy Effective Date for accidents and illness and 12 months from the Pet Policy Effective Date for illness related to hip dysplasia. | | | | | |

| **Payment Information** | |
|---|---|
| Total Monthly Premium: | $58.30 |

| **Endorsements** |
|---|
| Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue: Pet Health Insurance Policy Form LD-50812 (07/18); Signature Page CC-1K11I (02/18); Pet Health Insurance Notice LD-50793 (07/18); Chubb Group U.S. Privacy Notice ACE01 1016; OFAC Advisory Notice to Policyholders ILP-001 (01/04); Chubb Producer Compensation Practices & Policies ALL-20887 (10/06); Trade or Economic Sanctions Endorsement ALL-21101 (11/06); Pet Insurance Policy Disclosure CA AB 1535 (11/19); California Insurer Disclosure of Important Policy Provisions Updated; Claims Process Endorsement - PIM-52552 (08/19); California Amendatory Endorsement LD-54156 (09/20) |

CHUBB
healthypaws® PET INSURANCE

WESTCHESTER FIRE INSURANCE COMPANY

# PET HEALTH INSURANCE POLICY

Please read your Pet Health Insurance Policy carefully to determine the parties' rights and duties and what is and is not covered. Some provisions in the policy limit or restrict coverage.

Throughout this policy, the words **you** and **your,** refer to the policyholder (**Pet Parent**) shown in the Declarations Page.

The words **we, us** and **our,** refer to the company providing this insurance.

Words and phrases that appear in **bold type** have special meaning found in Section V. Definitions.

## I. INSURING AGREEMENT

**We** rely on the statements **you** made in the application. Upon **your** payment of the premiums when due, **we** will provide **coverage** as specifically described in this **policy** for **your pet** as shown on the **declarations page.**

Benefits are subject to terms, conditions, limitations and exclusions of this **policy** and to **your** responsibility for the **coinsurance** and **deductible. Coverage** is in effect at the time and date shown on the **declarations page** subject to the waiting periods described in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.** and **1) d.**

1) **WE COVER**: Reimbursement of the cost incurred by **you** for **medically necessary veterinary treatment** recommended by **your veterinarian** for **conditions** covered by this **policy.** These costs will be covered when **your pet:**

   a. develops an **illness,** or

   b. has an **injury** as a result of an **accident;**

   during the **coverage term.**

   This **policy** shall not cover amounts charged by the treating veterinary clinic that are greater than the treating veterinary clinic's standard or published charges.

2) **LIFETIME LIMIT**: The maximum amount **you** may claim while **coverage** is in force with respect to any one **pet** for **veterinary treatment** over the lifetime of that **pet.** The Lifetime Limit is shown on the **declarations page**. Subject to the maximum lifetime limit, there are no limits per claim or per year.

3) **COINSURANCE**: The portion **you** are required to pay for **your pet's veterinary treatment. Your pet's coinsurance** amount is shown on the **pet schedule** of the **declarations page**.

4) **DEDUCTIBLE**: **Your pet's deductible** is shown on the **pet schedule** of the **declarations page. Your pet's deductible** shall apply once per **coverage term**.

5) **MONTHLY PREMIUM**: **Your** monthly premium is set forth on **your declarations page**. Monthly premiums may change for all policyholders to reflect changes in the costs of veterinary medicine. **We** will notify **you** at least sixty (60) days in advance of such change.

6) **CHANGES TO YOUR COVERAGE**: **Your coverage**, **coinsurance**, and **deductible** will not change due to **your pet's** claims experience.

## II. EXCLUSIONS & LIMITATIONS

1) **GENERAL EXCLUSIONS**

   **We** do not cover:

   a. **Veterinary examination fees.**

b. **Injury** from an **accident** that occurs within the first fifteen (15) days following the **pet policy effective date.**

c. **Illness** that occurs or recurs within the first fifteen (15) days following the **pet policy effective date.**

d. **Illness** related to hip dysplasia that occurs or recurs within the first twelve (12) months following the **pet policy effective date.**

e. Conditions or complications that result from **accidents** that occur or **illnesses** that develop or redevelop within the first fifteen (15) days following the **pet policy effective date.**

2) **PRE-EXISTING CONDITIONS**

**We** do not cover **pre-existing conditions.**

3) **PREVENTIVE CARE EXCLUSIONS**

**We** do not cover:

a. **Spaying** and **neutering**.

b. Preventive healthcare including **vaccinations** or titer test, flea control, heartworm **medication**, de-worming, nail trim, and grooming.

c. Parasite control including but not limited to internal and external parasites for which readily available prophylactic treatments are available.

d. **Dental health care**, however if injury to teeth is caused by an **accident**, **we** do cover the cost of extraction and/or reconstruction of damaged teeth.

e. Anal gland expression.

4) **OTHER EXCLUSIONS**

**We** do not reimburse the costs, fees or expenses associated with:

a. **Injury** or **illness** due to any intentional, neglectful or preventable act, including organized dog fighting, by **you** or a member of **your** household;

b. Elective procedures, cosmetic procedures, preventive procedures including but not limited to:

   1. tail docking;
   2. ear cropping;
   3. de-clawing;
   4. micro-chipping;
   5. dew claw removal; or
   6. ear cleaning;

c. Boarding or transport expenses;

d. **Conditions** arising from a specific activity if the same or a similar activity occurred prior to the **pet policy effective date** and displayed the propensity for the activity to recur and cause **injury** or **illness** to **your pet**;

e. Future treatment for **injury** or **conditions** of a leg when cruciate ligament problems to any other leg existing prior to the **pet policy effective date**, have been identified, regardless of whether or not the new signs or symptoms are related to such cruciate ligament problems;

f. Diseases preventable by vaccines and prophylactic **medications** (such as heartworm, lice, internal parasites and fleas);

g. Complications of **conditions** excluded or limited by this **policy**;

h. Abnormalities where **clinical symptoms** were apparent prior to the **pet policy effective date**. This includes **conditions** that are detectable by a routine physical exam by **your veterinarian**;

i. Claims in any way arising from the lack of use and/or implementation of preventive healthcare products and/or methods when such products and/or methods would be in accordance with generally accepted veterinary standards. Routine healthcare includes: **vaccinations**, flea control, heartworm **medication**, de-worming, dental care, ear plucking, grooming, and prudent regular care;

j. Special diets, foods, vitamins, grooming, nail trims, shampoo and bathing;

k. Any claim for loss from a nuclear incident as defined in the Nuclear Liability Act, nuclear explosion or contamination by radioactive material;

l. **Conditions** arising from any specific activity if the same or similar activity occurs after **you** have received written notice from **us** regarding the specific activity;

m. Experimental or investigational treatment or medicine;

n. Breeding or **conditions** relating to breeding, whelping, and queening;

o. **Diagnostic tests** for **conditions** excluded by this **policy**;

p. **Diagnostic tests** due to complications of **conditions** excluded or limited by this **policy**;

q. **Conditions** caused by war or war activities whether war be declared or not. War activities include civil war, insurrection, rebellion, or revolution or any act or **condition** incident of any of the foregoing;

r. Feeding, housing or exercise;

s. Training, therapy, **medications** or other methods or forms of behavioral modification;

t. Shipping or mailing costs unless associated with a covered compounded **medication** or **diagnostic tests**.

5) **LIMITATIONS**

a. A **pet** less than six (6) years of age on the date of enrollment must have undergone a complete **clinical examination.** The exam must have taken place either in the twelve (12) months prior to the **pet policy effective date**, or within fifteen (15) days following the **pet policy effective date**. A **pet** six (6) years of age or greater on the date of enrollment must have undergone a complete **clinical examination** within thirty (30) days prior to the **pet policy effective date,** or within fifteen (15) days following the **pet policy effective date**. **Your** failure to submit **your pet** to a complete **clinical examination** may void the **policy**. If the **policy** is voided, the **policy** premium will be refunded.

b. For **pets** six (6) years of age or greater on the date of enrollment, no **coverage** shall apply for **illness** related to hip dysplasia.

c. For **working pets**, no **coverage** shall apply for any **condition** resulting from activities related to racing, breeding, law enforcement, guarding or for any commercial use.

d. **We** will not make any payments for any claims for which **you** are entitled to be paid under any other insurance except for any additional sum which is payable over and above such other insurance.

## III. GENERAL CONDITIONS

1) Premium is payable monthly by Direct Debit or by charge to **your** credit card, according to the option selected by **you** on the application. This **policy** is continued until cancelled, and will renew automatically each month as long as premium payments are current. When **you** have not paid the premium, **we** may cancel this **policy. We** will let **you** know at least twenty (20) days before the date cancellation takes effect. No coverage will be provided for any claim with a date of **veterinary treatment** between the premium due date and the cancellation date, unless the premium payments are current.

2) **You** may cancel **your policy** by notifying **us** in writing via regular mail, fax or email at least fourteen (14) days in advance of **your** next premium payment.

3) **You** must be the owner of each **pet** shown on the **pet schedule**. If the **pet** owner dies, becomes unable to care for any insured **pet**, or passes the ownership of any insured **pet**, the **coverage** will continue without interruption, if approved in writing by **us**, subject to all other terms and conditions of this **policy**.

4) A **pet** is covered under this **policy** only while the **pet** is in the United States of America, or temporarily away in Canada.

5) **You** must agree to implement all reasonable means possible in the care and protection of **your pet**. **You** further agree to protect **your pet** from aggravation or recurrence of the **injury** /or **illness**.

6) This **coverage** is not transferable to other **pets**. All new **pets** are subject to a new application and your monthly payment will increase.

7) **You** are entitled to increase the **deductible** or **coinsurance** amount applicable to **your pet** at any time. This request must be made in writing and will become effective the month following approval by **us**. **You** may apply to lower the deductible or **coinsurance** amount applicable to **your pet** provided you have not previously filed a claim with **us** for that **pet**. This request must be in writing and will become effective the month following approval by **us**.

8) Notice of loss must be given by either **you** or **your** agent.

9) The loss is payable within sixty days after completion of the claim form, unless applicable state law provides for a shorter period.

10) In order to process a claim, **you** must allow **us** to contact **your** present and previous **veterinarian(s)** and provide **us** with the necessary authority to obtain any information **we** may require. In the event information relating to the history of the **pet** is missing or incomplete, the claim will not be processed. **You** must also agree to submit the **pet** to examination, if **we** require, by a **veterinarian** selected by **us**.

11) In the event of any disagreement between **you** and **us** with regard to a claim, the matter will be referred to a **veterinarian** of **ours**. If the matter is not resolved, an independent third party **veterinarian** shall be appointed by **us**. This independent third party **veterinarian's** decision shall be final and binding on all parties.

12) Every action or proceeding against **us** for the recovery of any claim under or by virtue of this contract is absolutely barred unless commenced within one year after the loss or damage occurs or unless state law requires a longer period.

**IV. ADDITIONAL CONDITIONS**

**1) MISREPRESENTATION AND FRAUD** – This **policy** will be voided if **you** have concealed or misrepresented any material fact or circumstance concerning this insurance or the **pet** covered. **We** do not provide **coverage**, for an insured who has intentionally concealed or misrepresented any such facts or circumstances before or after a loss.

**2) CANCELLATION**

a. **We** may cancel this **policy** if **we** do not receive a monthly premium from **you** when the premium is due. In such a case a written notice will be sent to **you** at **your** last email address known to **us**. We will provide at least (20) days notice of our intent to cancel. The notice will be in accordance with the provisions of **III. GENERAL CONDITIONS** 1). Otherwise, **we** may cancel this policy by providing **you** at least ninety (90) days written notice.

b. **You** may cancel this **policy** at any time by notifying **us** in writing via regular mail, fax or email. This is in accordance with the provisions of III. **GENERAL CONDITIONS** 2).

**3) STATE LAW** – When this **policy's** provisions are in conflict with the statutes of the state in which this **policy** is issued, the provisions are amended to conform to such statutes.

**4) ENTIRE CONTRACT** – This **policy**, the **declarations page**, and any attached endorsement constitutes the entire agreement between **you** and **us**.

5) **FREE LOOK PERIOD** - If **you** are not satisfied with this **policy** within thirty (30) days of the **Policy Effective Date**, **you** may cancel **your** insurance. **We** will refund **your** premium in full, as long as **you** have not submitted a claim.

## V. DEFINITIONS

The following defined words or phrases in the **policy** are printed in bold type and have the following meanings, unless a different meaning is described in a particular coverage or endorsement.

1) **Accident.** An unexpected and unintended event.
2) **Clinical Examination.** A thorough examination performed by a licensed and registered **veterinarian** encompassing all body systems of the **pet**. Examination can also be referred to as "full physical, physical consultation, full examination or veterinary examination."
3) **Clinical Symptoms.** Any manifested anomaly in, or deviation from the regular healthy state or function of a **pet**, including behavioral traits. **Clinical Symptoms** include any anomaly that is readily detectible by a thorough and complete **clinical examination**.
4) **Coinsurance. Your** portion of the cost of insured **veterinary treatment for your pet** before any **deductible** is applied. **Your pet's coinsurance** amount is shown as "Your Share" on the **pet schedule** of the **declarations page**.
5) **Condition.** Any manifestations of **clinical symptoms** consistent with a diagnosis or diagnoses, regardless of the number of such symptoms or areas of the body affected.
6) **Coverage.** The insurance protection described in this **policy** form and on the **declarations page.**
7) **Coverage Term.** A twelve (12) month period that begins with the effective date of **coverage** and continues for each twelve (12) month period thereafter.
8) **Declarations Page.** A written document comprising part of this **policy**, which identifies the insured, the **policy** number, and the insured **pet schedule** with the **coverage** options selected and Lifetime Limit provided.
9) **Deductible.** The amount **you** must first pay with respect to the cost of insured **veterinary treatment** for **your pet** after **your pet's coinsurance** portion has been applied.
10) **Dental Health Care.** The care required to maintain dental hygiene for **your pet.** This includes cleaning, brushing, scaling, polishing, extractions and reconstructions.
11) **Diagnostic Tests.** Tests used to determine the overall health of **your pet**. **Diagnostic tests** can be used as a way to detect certain abnormalities. It can also validate the current health of **your pet**, or help to evaluate an older **pet** more thoroughly before problems surface.
12) **Hospitalization.** Charges for boarding **your pet** at a veterinary clinic as required by your **veterinarian** to deliver nursing care, administer **medication** to or monitor **your pet**.
13) **Illness.** Sickness, disease or any other changes to **your pet's** normal healthy state; or any **condition** other than **your pet's** normal healthy state.
14) **Injury** or **Injuries.** Physical harm or damage to **your pet** arising from normal activity or an **accident**.
15) **Medically Necessary.** Medical services, supplies or treatments provided by a **veterinarian** to treat covered **pets** which are:
    a. consistent with symptoms or diagnosis;
    b. appropriate and meet generally accepted veterinary practice standards;
    c. not primarily for the convenience of the **pet parent**, **your veterinarian** or other providers; and
    d. consistent with the most appropriate supply or level of services which can safely be provided to the **pet**.
16) **Medication.** Any veterinary recommended **medications** prescribed by **your veterinarian** and approved by the Food and Drug Administration (FDA) for veterinary use.

17) **Neutering.** Orchiectomy, or surgical removal of the testicles.

18) **Pet or Pets.** A domestic cat or dog that is owned for companionship or as a help dog. **Pet** or **Pets** do not include a domestic cat or dog that is involved in activities other than companionship or helping, including, but not limited to, racing, breeding, law enforcement, guarding or commercial activities.

19) **Pet Parent.** The owner of the **pet,** including owner's spouse or partner.

20) **Pet Policy Effective Date.** 12:01 a.m. of the day following the date you enroll **your pet**, as shown on the **pet schedule** of the **declarations page**, subject to the waiting periods as defined in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.,** and **1) d.**

21) **Pet Schedule.** The table shown on the **declarations page** that identifies the **pet policy effective date**, policy number and **coverage** options related to a specific insured **pet.**

22) **Policy.** The terms and conditions and most recent **declarations page** that includes any endorsements that apply.

23) **Policy Effective Date.** 12:01 a.m. of the day following the date Shown in the Declarations, subject to the waiting periods as defined in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.,** and **1) d.**

24) **Pre-existing conditions** means:

a. **Illness** or **condition** which developed or redeveloped prior to the **pet policy effective date**;

b. an **injury,** or recurrence of an **injury,** as a result of an **accident** that occurred prior to the **pet policy effective date**; or

c. any **condition** or complication resulting from an **illness** that developed, or any **injury** as a result of an **accident** that occurred prior to the **pet policy effective date.**

25) **Spaying.** Ovariohysterectomy, or resection of the ovaries and uterus.

26) **Supplies.** Any item that is **medically necessary**, as determined by the **veterinarian**, that is safe and effective for its intended use, and that omission would adversely affect the insured **pet**.

27) **Surgery** or **Surgeries.** Any procedure that treats diseases or **injuries** by operative manual and instrumental treatment.

28) **Vaccination.** The administration of an industry-recognized commercial vaccine by a registered licensed **veterinarian**. The vaccine must be in accordance with the manufacturer's recommendations, following a complete **clinical examination,** for prevention of disease.

29) **Veterinarian.** A properly licensed and registered **veterinarian** in active practice in the area where the **pet** is treated or examined. **Veterinarian** shall not include **you** or a member of **your** immediate family.

30) **Veterinary Examinations Fees.** Fees charged for the professional opinion of a **veterinarian**. Also referred to as consultation, examination, referral, and recheck fees.

31) **Veterinary Treatment** means:

a. X-rays;

b. Laboratory and **diagnostic tests**;

c. **Medication**;

d. **Surgeries;**

e. **Supplies;**

f. **Hospitalization;**

g. Euthanasia; and

h. Nursing care;

provided by a licensed **veterinarian** and their staff under direct supervision.

32) **Waiting Periods.** 15 days from the **Pet Policy Effective Date** for **accidents** and **illness** and 12 months from the **Pet Policy Effective Date** for **illness** related to hip dysplasia.

33) **Working Pets.** Any **pet** involved in activities other than companionship or helping, including, but not limited to, racing, breeding, law enforcement, guarding or for other commercial use.

34) **Your Pet.** The dog or cat named in the **pet schedule** of the **declarations page**.

# EXHIBIT 3

healthypaws PET INSURANCE

Indemnity Insurance Company of North America
436 Walnut Street
Philadelphia, PA 19106

# Pet Health Insurance Policy Declarations Page

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE TO PROVIDE YOU WITH THE INSURANCE AS STATED IN THIS POLICY.

| Policy Information | |
|---|---|
| **Policy Number:** 404051 | **Policy Effective Date:** 8/29/2016 12:01AM at the address of the Pet Parent shown below. |
| **Policy Term:** Continuous until Cancelled | **Lifetime Limit:** Unlimited per pet |

| Pet Parent Information | |
|---|---|
| **Name:** Nikki Than | **Phone:** (714) 227-2386 |
| **Street Address:** 16641 Marie Lane | **City:** Huntington Beach |
| **State:** CA | **Zip Code:** 92647 |

## Pet Schedule

| **Pet Name:** Summer | **Pet Policy ID:** 404051-1 | **Type:** Dog | **Breed:** Retriever Mix | **Date of Birth:** 5/2016 | **Pet Sex:** Female |
|---|---|---|---|---|---|
| **Pet Policy Effective Date:** 8/29/2016 12:01AM at the address of the Pet Parent shown above. | | **Coinsurance (Your Share):** 10% | **Reimbursement (Our Share):** 90% | **Annual Deductible:** $100 | **Monthly Premium:** $55.35 |
| **Waiting Period:** 15 days from the Pet Policy Effective Date for accidents and illness **and** 12 months from the Pet Policy Effective Date for illness related to hip dysplasia. | | | | | |

## Payment Information

| | |
|---|---|
| **Total Monthly Premium:** | $55.35 |

## Forms and Endorsements Attached

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue: Pet Health Insurance Policy Form PI-39279 (11/12); Pet Health Insurance Notice PI-39285 (11/12); ACE Privacy Notice Form #ALL-39844 (02/13); Trade or Economic Sanctions Endorsement ALL-21101 (11/06); ACE Producer Compensation Practices & Policies ALL-20887 (10/06); Signature Page CC-1K11g (01/11); OFAC Advisory Notice to Policyholders ILP-001 (01/04)

**These declarations, together with the Common Policy Conditions and Coverage Form(s) and any Endorsements(s), complete the above numbered policy.**

Jennifer Sherwood

healthypaws® PET INSURANCE

**Indemnity Insurance Company of North America**

# Pet Health Insurance Policy

Please read your Pet Health Insurance Policy carefully to determine the parties' rights and duties and what is and is not covered. Some provisions in the policy limit or restrict coverage.

Throughout this policy, the words **you** and **your,** refer to the policyholder (**Pet Parent**) shown in the Declarations Page.

The words **we, us and our,** refer to the company providing this insurance.

Words and phrases that appear in **bold type** have special meaning found in Section V. Definitions.

## I. INSURING AGREEMENT

**We** rely on the statements **you** made in the application. Upon **your** payment of the premiums when due, **we** will provide **coverage** as specifically described in this **policy** for **your pet** as shown on the **declarations page.**

Benefits are subject to terms, conditions, limitations and exclusions of this **policy** and to **your** responsibility for the **coinsurance and deductible. Coverage** is in effect at the time and date shown on the **declarations page** subject to the waiting periods described in **II. EXCLUSIONS & LIMITATIONS 1) b,.1) c.** and **1) d.**

1) **WE COVER**: Reimbursement of the cost incurred by **you** for **medically necessary veterinary treatment** recommended by **your veterinarian** for **conditions** covered by this **policy.** These costs will be covered when **your pet:**

   a. develops an **illness,** or

   b. has an **injury** as a result of an **accident;**

   during the **coverage term.**

   This **policy** shall not cover amounts charged by the treating veterinary clinic that are greater than the treating veterinary clinic's standard or published charges.

2) **LIFETIME LIMIT**: The maximum amount **you** may claim while **coverage** is in force with respect to any one **pet** for **veterinary treatment** over the lifetime of that **pet.** The Lifetime Limit is shown on the **declarations page.** Subject to the maximum lifetime limit, there are no limits per claim or per year.

3) **COINSURANCE**: The portion **you** are required to pay for **your pet's veterinary treatment. Your pet's coinsurance** amount is shown on the **pet schedule** of the **declarations page.**

4) **DEDUCTIBLE**: **Your pet's deductible** is shown on the **pet schedule** of the **declarations page. Your pet's deductible** shall apply once per **coverage term.**

5) **MONTHLY PREMIUM**: **Your** monthly premium is set forth on **your declarations page.** Monthly premiums may change for all policyholders to reflect changes in the costs of veterinary medicine. **We** will notify **you** at least sixty (60) days in advance of such change.

6) **CHANGES TO YOUR COVERAGE**: **Your coverage, coinsurance, and deductible** will not change due to **your pet's** claims experience.

## II. EXCLUSIONS & LIMITATIONS

### 1) GENERAL EXCLUSIONS

**We** do not cover:

a. **Veterinary examination fees.**

b. **Injury** from an **accident** that occurs within the first fifteen (15) days following the **pet policy effective date.**

c. **Illness** that occurs or recurs within the first fifteen (15) days following the **pet policy effective date.**

d. **Illness** related to hip dysplasia that occurs or recurs within the first twelve (12) months following the **pet policy effective date.**

### 2) PRE-EXISTING CONDITIONS

**We** do not cover **pre-existing conditions.**

**Pre-existing conditions** means:

a. **illness** or the recurrence of any **illness** or **condition** which first occurred or displayed any signs and/or symptoms consistent with the stated **illness** or **condition** prior to the **pet policy effective date;**

b. an **injury** or recurrence of an **injury** that occurred prior to the **pet policy effective date**; or

c. any **condition** or complication resulting from an **illness** or **injury** that occurred prior to the **pet policy effective date.**

### 3) PREVENTIVE CARE EXCLUSIONS

**We** do not cover:

a. **Spaying** and **neutering.**

b. Preventive healthcare including **vaccinations** or titer test, flea control, heartworm **medication**, de-worming, nail trim, and grooming.

c. Parasite control including but not limited to internal and external parasites for which readily available prophylactic treatments are available.

d. **Dental health care**, however if injury to teeth is caused by an accident, **we** do cover the cost of extraction and/or reconstruction of damaged teeth.

e. Anal gland expression.

### 4) OTHER EXCLUSIONS

**We** do not reimburse the costs, fees or expenses associated with:

a. **Injury** or **illness** due to any intentional, neglectful or preventable act, including organized dog fighting, by **you** or a member of **your** household;

b. Elective procedures, cosmetic procedures, preventive procedures including but not limited to:

1. tail docking;
2. ear cropping;
3. de-clawing;
4. micro-chipping;
5. dew claw removal; or

6. ear cleaning;

c. Boarding or transport expenses;

d. **Conditions** arising from a specific activity if the same or a similar activity occurred prior to the **pet policy effective date** and displayed the propensity for the activity to recur and cause **injury** or **illness** to **your pet**;

e. Pre-existing cruciate ligament problems to one leg as respects the cost of future treatment for problems of the other leg;

f. Diseases preventable by vaccines and prophylactic **medications** (such as heartworm, lice, internal parasites and fleas);

g. Complications of **conditions** excluded or limited by this **policy**;

h. Abnormalities where **clinical symptoms** were apparent prior to the **pet policy effective date**. This includes **conditions** that are detectable by a routine physical exam by **your veterinarian**;

i. Claims in any way arising from the lack of use and/or implementation of preventive healthcare products and/or methods when such products and/or methods would be in accordance with generally accepted veterinary standards. Routine healthcare includes: **vaccinations**, flea control, heartworm **medication**, de-worming, dental care, ear plucking, grooming, and prudent regular care;

j. Special diets, **pet** foods, vitamins, supplements, grooming, nail trims, shampoo and bathing (including medicated baths);

k. Any claim for loss from a nuclear incident as defined in the Nuclear Liability Act, nuclear explosion or contamination by radioactive material;

l. **Conditions** arising from any specific activity if the same or similar activity occurs after **you** have received written notice from **us** regarding the specific activity;

m. Experimental or investigational treatment or medicine;

n. Breeding or **conditions** relating to breeding, whelping, and queening;

o. **Diagnostic tests** for **conditions** excluded by this **policy**;

p. **Diagnostic tests** due to complications of **conditions** excluded or limited by this **policy**;

q. **Conditions** caused by war or war activities whether war be declared or not. War activities include civil war, insurrection, rebellion, or revolution or any act or **condition** incident of any of the foregoing;

r. Feeding, housing or exercise;

s. Behavioral modification, training, therapy or **medications** for behavioral modification.

## 5) LIMITATIONS

a. A **pet** less than six (6) years of age on the date of enrollment must have undergone a complete **clinical examination.** The exam must have taken place either in the twelve (12) months prior to the **pet policy effective date**, or within fifteen (15) days following the **pet policy effective date.** A **pet** six (6) years of age or greater on the date of enrollment must have undergone a complete **clinical examination** within thirty (30) days prior to the **pet policy effective date,** or within fifteen (15) days following the **pet policy effective date. Your** failure to submit **your pet** to a complete **clinical examination** may void the **policy**. If the **policy** is voided, the **policy** premium will be refunded.

b. For **pets** six (6) years of age or greater on the date of enrollment, no **coverage** shall apply for **illness** related to hip dysplasia.

c. For **working pets**, no **coverage** shall apply for any **condition** resulting from activities related to racing, breeding, law enforcement, guarding or for any commercial use.

d. **We** will not make any payments for any claims for which **you** are entitled to be paid under any other insurance except for any additional sum which is payable over and above such other insurance.

## III. GENERAL CONDITIONS

1) Premium is payable monthly by Direct Debit or by charge to **your** credit card, according to the option selected by **you** on the application. This **policy** is continued until cancelled, and will renew automatically each month as long as premium payments are current. When **you** have not paid the premium, **we** may cancel this **policy. We** will let **you** know at least twenty (20) days before the date cancellation takes effect. No coverage will be provided for any claim with a date of **veterinary treatment** between the premium due date and the cancellation date, unless the premium payments are current.

2) **You** may cancel **your policy** by notifying **us** in writing via regular mail, fax or email at least fourteen (14) days in advance of **your** next premium payment.

3) **You** must be the owner of the **pet(s)**. If the **pet** owner dies, becomes unable to care for the insured **pet(s)**, or passes the ownership of the insured **pet(s)**, the **coverage** will continue without interruption, if approved in writing by **us**, subject to all other terms and conditions of this **policy**.

4) A **pet** is covered under this **policy** only while the **pet** is in the United States of America, or temporarily away in Canada.

5) **You** must agree to implement all reasonable means possible in the care and protection of **your pet. You** further agree to protect the **pet** from aggravation and/or recurrence of the **injury** and/or **illness** after occurrence.

6) This **coverage** is not transferable to other **pets**. All new **pets** are subject to a new application and your monthly payment will increase.

7) **You** are entitled to increase **your pet's deductible** level and/or increase **your pet's coinsurance** amount at any time. This request must be made in writing and will become effective the month following approval by **us**. **You** may apply to lower **your pet's deductible** level and/or decrease **your pet's coinsurance** amount provided that **your pet** has not previously filed a claim with **us**. This request must be in writing and will become effective the month following approval by **us**.

8) Notice of loss must be given by either **you** or **your** agent.

9) The loss is payable within sixty days after completion of the claim form, unless applicable state law provides for a shorter period.

10) In order to process a claim, **you** must allow **us** to contact **your** present and previous **veterinarian(s)** and provide **us** with the necessary authority to obtain any information **we** may require. In the event information relating to the history of the **pet** is missing or incomplete, the claim will not be processed. **You** must also agree to submit the **pet** to examination, if **we** require, by a **veterinarian we** select.

11) In the event of any disagreement between **you** and **us** with regards to a claim, the matter will be referred to **our veterinarian.** If the matter is not resolved, an independent third party **veterinarian** shall be appointed by **us.** This independent third party **veterinarian's** decision shall be final and binding on all parties.

12) Every action or proceeding against **us** for the recovery of any claim under or by virtue of this contract is absolutely barred unless commenced within one year after the loss or damage occurs or unless state law requires a longer period.

## IV. ADDITIONAL CONDITIONS

1) **MISREPRESENTATION AND FRAUD** – This **policy** will be voided if **you** have concealed or misrepresented any material fact or circumstance concerning this insurance or the **pet(s)** covered. **We** do not provide **coverage**, for an insured who has intentionally concealed or misrepresented any such facts or circumstances before or after a loss.

2) **CANCELLATION**

a. **We** may cancel this **policy** if **we** do not receive a monthly premium from **you** when the premium is due. In such a case a written notice will be sent to **you** at **your** last email address known to **us**. We will provide at least (20) days

notice of our intent to cancel. The notice will be in accordance with the provisions of **III. GENERAL CONDITIONS** 1). Otherwise, **we** may cancel this policy by providing **you** at least ninety (90) days written notice.

b. **You** may cancel this **policy** at any time by notifying **us** in writing via regular mail, fax or email. This is in accordance with the provisions of III. **GENERAL CONDITIONS** 2).

3) **STATE LAW** – When this **policy's** provisions are in conflict with the statutes of the state in which this **policy** is issued, the provisions are amended to conform to such statutes.

4) **ENTIRE CONTRACT** – This **policy**, the **Declarations Page**, and any attached endorsement contain all the agreements between **you** and **us**.

5) **FREE LOOK PERIOD** - If **you** are not satisfied with this **policy** within thirty (30) days of the **Policy Effective Date**, **you** may cancel **your** insurance. **We** will refund **your** premium in full, as long as **you** have not submitted a claim.

## V. DEFINITIONS

The following defined words or phrases in the **policy** are printed in bold type and have the following meanings, unless a different meaning is described in a particular coverage or endorsement.

1) **Accident.** An unexpected and unintended event causing **injury** to **your pet**.

2) **Clinical Examination.** A thorough examination performed by a licensed and registered **veterinarian** encompassing all body systems of the **pet**. Examination can also be referred to as "full physical, physical consultation, full examination or veterinary examination."

3) **Clinical Symptoms.** Any manifested anomaly in, or deviation from the regular healthy state or function of a **pet**, including behavioral traits. Symptoms include any anomaly that is readily detectible by a thorough and complete **clinical examination.**

4) **Coinsurance. Your** portion of the cost of insured **veterinary treatment for your pet** before any **deductible** is applied. **Your pet's coinsurance** amount is shown as "Your Share" on the **pet schedule** of the **declarations page.**

5) **Condition.** Any manifestations of **clinical symptoms** consistent with a diagnosis or diagnoses, regardless of the number of incidents or areas of the body affected.

6) **Coverage.** The insurance protection described in this **policy** form and on the **declarations page.**

7) **Coverage Term.** A twelve (12) month period that begins with the effective date of **coverage** and continues for each twelve (12) month period thereafter.

8) **Declarations Page.** A written document comprising part of this **policy**, which identifies the insured, the **policy** number, and the insured **pet schedule** with the **coverage** options selected and Lifetime Limit provided.

9) **Deductible.** The amount **you** must first pay with respect to the cost of insured **veterinary treatment** for **your pet** after **your pet's coinsurance** portion has been applied.

10) **Dental Health Care.** The regular care required to maintain dental hygiene for **your pet.** This includes brushing, scaling, polishing, extractions and reconstructions.

11) **Diagnostic Tests.** Tests used to determine the overall health of **your pet. Diagnostic tests** can be used as a way to detect certain abnormalities. It can also validate the current health of **your pet**, or help to evaluate an older **pet** more thoroughly before problems surface.

12) **Hospitalization.** Charges for boarding **your pet** at a veterinary clinic as required by your **veterinarian** to deliver nursing care, administer **medication** to or monitor **your pet**.

13) **Illness.** Sickness, disease and any changes to **your pet's** normal healthy state; any **condition** other than **your pet's** normal healthy state.

14) **Injury(ies).** Physical harm or damage to **your pet** arising from normal activity or an **accident.**

15) **Medically Necessary.** Medical services, supplies or treatments provided by a **veterinarian** to treat covered **pets** which are:

a. consistent with symptoms or diagnosis;

b. appropriate and meet generally accepted veterinary practice standards;

c. not primarily for the convenience of the **pet parent, your veterinarian** or other providers; and

d. consistent with the most appropriate supply or level of services which can safely be provided to the **pet**.

16) **Medication.** Any veterinary recommended **medications** prescribed by **your veterinarian** and approved by the Food and Drug Administration (FDA) for veterinary use.

17) **Neutering.** Orchidectomy, or surgical removal of the testicles.

18) **Pet** or **Pets.** A domestic cat or dog that is owned for companionship or as a help dog, not owned for commercial reasons. Commercial reasons include, but are not limited to, a **racing dog.**

19) **Pet Parent.** The owner of the **pet,** including owner's spouse or partner.

20) **Pet Policy Effective Date.** 12:01 a.m. of the day following the date you enroll **your pet**, as shown on the **pet schedule** of the **declarations page**, subject to the waiting periods as defined in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.,** and **1) d.**

21) **Pet Schedule.** The table shown on the **declarations page** that identifies the **pet policy effective date**, policy number and **coverage** options related to a specific insured **pet.**

22) **Policy.** The terms and conditions and most recent **declarations page** that includes any endorsements that apply.

23) **Policy Effective Date.** 12:01 a.m. of the day following the date Shown in the Declarations, subject to the waiting periods as defined in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.,** and **1) d.**

24) **Pre-existing conditions** means:

a. **illness** or the recurrence of any **illness** or **condition** which first occurred or displayed any signs and/or symptoms consistent with the stated **illness** or **condition** prior to the **pet policy effective date**;

b. an **injury** or recurrence of an **injury** that occurred prior to the **pet policy effective date**; or

c. any **condition** or complication resulting from an **illness** or **injury** that occurred prior to the **pet policy effective date.**

25) **Racing Dog.** A dog, which is owned and maintained for the purpose of competing in organized races or speed contests.

26) **Spaying.** Ovariohysterectomy, or resection of the ovaries and uterus.

27) **Supplies.** Any item that is **medically necessary**, as determined by the **veterinarian**, that is safe and effective for its intended use, and that omission would adversely affect the insured **pet.**

28) **Surgery (ies).** Procedure(s) that treat diseases or **injuries** by operative manual and instrumental treatment.

29) **Vaccination.** The administration of an industry-recognized commercial vaccine by a registered licensed **veterinarian.** The vaccine must be in accordance with the manufacturer's recommendations, following a complete **clinical examination,** for prevention of disease.

30) **Veterinarian.** A properly licensed and registered **veterinarian** in active practice in the area where **your pet** is treated or examined. **Veterinarian** shall not include **you** or a member of **your** immediate family.

31) **Veterinary Examinations Fees.** Fees charged for the professional opinion of a **veterinarian.** Also referred to as consultation, examination, referral, and recheck fees.

32) **Veterinary Treatment** means:

a. X-rays;

b. Laboratory and **diagnostic tests;**

c. **Medication;**

d. **Surgeries;**

e. **Supplies;**

f. **Hospitalization;**

g. Euthanasia; and

h. Nursing care;

provided by a licensed **veterinarian** and their staff under direct supervision.

33) **Working Pets.** Any **pet** involved in activities other than companionship or helping, including, but not limited to, racing, breeding, law enforcement, guarding or for other commercial use.

34) **Your Pet.** The dog or cat named in the **pet schedule** of the **declarations page**.

# EXHIBIT 4

CHUBB

healthypaws® PET INSURANCE

WESTCHESTER FIRE INSURANCE COMPANY

# PET HEALTH INSURANCE POLICY

Please read your Pet Health Insurance Policy carefully to determine the parties' rights and duties and what is and is not covered. Some provisions in the policy limit or restrict coverage.

Throughout this policy, the words **you** and **your,** refer to the policyholder (**Pet Parent**) shown in the Declarations Page.

The words **we, us** and **our,** refer to the company providing this insurance.

Words and phrases that appear in **bold type** have special meaning found in Section V. Definitions.

## I. INSURING AGREEMENT

**We** rely on the statements **you** made in the application. Upon **your** payment of the premiums when due, **we** will provide **coverage** as specifically described in this **policy** for **your pet** as shown on the **declarations page**.

Benefits are subject to terms, conditions, limitations and exclusions of this **policy** and to **your** responsibility for the **coinsurance** and **deductible. Coverage** is in effect at the time and date shown on the **declarations page** subject to the waiting periods described in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.** and **1) d.**

1) **WE COVER**: Reimbursement of the cost incurred by **you** for **medically necessary veterinary treatment** recommended by **your veterinarian** for **conditions** covered by this **policy.** These costs will be covered when **your pet:**

   a. develops an **illness,** or

   b. has an **injury** as a result of an **accident;**

   during the **coverage term**.

   This **policy** shall not cover amounts charged by the treating veterinary clinic that are greater than the treating veterinary clinic's standard or published charges.

2) **LIFETIME LIMIT**: The maximum amount **you** may claim while **coverage** is in force with respect to any one **pet** for **veterinary treatment** over the lifetime of that **pet**. The Lifetime Limit is shown on the **declarations page**. Subject to the maximum lifetime limit, there are no limits per claim or per year.

3) **COINSURANCE**: The portion **you** are required to pay for **your pet's veterinary treatment**. **Your pet's coinsurance** amount is shown on the **pet schedule** of the **declarations page**.

4) **DEDUCTIBLE**: **Your pet's deductible** is shown on the **pet schedule** of the **declarations page. Your pet's deductible** shall apply once per **coverage term**.

5) **MONTHLY PREMIUM**: **Your** monthly premium is set forth on **your declarations page**. Monthly premiums may change for all policyholders to reflect changes in the costs of veterinary medicine. **We** will notify **you** at least sixty (60) days in advance of such change.

6) **CHANGES TO YOUR COVERAGE**: **Your coverage, coinsurance,** and **deductible** will not change due to **your pet's** claims experience.

## II. EXCLUSIONS & LIMITATIONS

1) **GENERAL EXCLUSIONS**

   **We** do not cover:

   a. **Veterinary examination fees.**

b. **Injury** from an **accident** that occurs within the first fifteen (15) days following the **pet policy effective date.**

c. **Illness** that occurs or recurs within the first fifteen (15) days following the **pet policy effective date**.

d. **Illness** related to hip dysplasia that occurs or recurs within the first twelve (12) months following the **pet policy effective date.**

e. Conditions or complications that result from **accidents** that occur or **illnesses** that develop or redevelop within the first fifteen (15) days following the **pet policy effective date.**

**2) PRE-EXISTING CONDITIONS**

**We** do not cover **pre-existing conditions.**

**3) PREVENTIVE CARE EXCLUSIONS**

**We** do not cover:

a. **Spaying** and **neutering**.

b. Preventive healthcare including **vaccinations** or titer test, flea control, heartworm **medication**, de-worming, nail trim, and grooming.

c. Parasite control including but not limited to internal and external parasites for which readily available prophylactic treatments are available.

d. **Dental health care**, however if injury to teeth is caused by an **accident**, **we** do cover the cost of extraction and/or reconstruction of damaged teeth.

e. Anal gland expression.

**4) OTHER EXCLUSIONS**

**We** do not reimburse the costs, fees or expenses associated with:

a. **Injury** or **illness** due to any intentional, neglectful or preventable act, including organized dog fighting, by **you** or a member of **your** household;

b. Elective procedures, cosmetic procedures, preventive procedures including but not limited to:

1. tail docking;
2. ear cropping;
3. de-clawing;
4. micro-chipping;
5. dew claw removal; or
6. ear cleaning;

c. Boarding or transport expenses;

d. **Conditions** arising from a specific activity if the same or a similar activity occurred prior to the **pet policy effective date** and displayed the propensity for the activity to recur and cause **injury** or **illness** to **your pet**;

e. Future treatment for **injury** or **conditions** of a leg when cruciate ligament problems to any other leg existing prior to the **pet policy effective date**, have been identified, regardless of whether or not the new signs or symptoms are related to such cruciate ligament problems;

f. Diseases preventable by vaccines and prophylactic **medications** (such as heartworm, lice, internal parasites and fleas);

g. Complications of **conditions** excluded or limited by this **policy**;

h. Abnormalities where **clinical symptoms** were apparent prior to the **pet policy effective date**. This includes **conditions** that are detectable by a routine physical exam by **your veterinarian**;

i. Claims in any way arising from the lack of use and/or implementation of preventive healthcare products and/or methods when such products and/or methods would be in accordance with generally accepted veterinary standards. Routine healthcare includes: **vaccinations**, flea control, heartworm **medication**, de-worming, dental care, ear plucking, grooming, and prudent regular care;

j. Special diets, foods, vitamins, grooming, nail trims, shampoo and bathing;

k. Any claim for loss from a nuclear incident as defined in the Nuclear Liability Act, nuclear explosion or contamination by radioactive material;

l. **Conditions** arising from any specific activity if the same or similar activity occurs after **you** have received written notice from **us** regarding the specific activity;

m. Experimental or investigational treatment or medicine;

n. Breeding or **conditions** relating to breeding, whelping, and queening;

o. **Diagnostic tests** for **conditions** excluded by this **policy**;

p. **Diagnostic tests** due to complications of **conditions** excluded or limited by this **policy**;

q. **Conditions** caused by war or war activities whether war be declared or not. War activities include civil war, insurrection, rebellion, or revolution or any act or **condition** incident of any of the foregoing;

r. Feeding, housing or exercise;

s. Training, therapy, **medications** or other methods or forms of behavioral modification;

t. Shipping or mailing costs unless associated with a covered compounded **medication** or **diagnostic tests**.

**5) LIMITATIONS**

a. A **pet** less than six (6) years of age on the date of enrollment must have undergone a complete **clinical examination.** The exam must have taken place either in the twelve (12) months prior to the **pet policy effective date**, or within fifteen (15) days following the **pet policy effective date**. A **pet** six (6) years of age or greater on the date of enrollment must have undergone a complete **clinical examination** within thirty (30) days prior to the **pet policy effective date,** or within fifteen (15) days following the **pet policy effective date**. **Your** failure to submit **your pet** to a complete **clinical examination** may void the **policy**. If the **policy** is voided, the **policy** premium will be refunded.

b. For **pets** six (6) years of age or greater on the date of enrollment, no **coverage** shall apply for **illness** related to hip dysplasia.

c. For **working pets**, no **coverage** shall apply for any **condition** resulting from activities related to racing, breeding, law enforcement, guarding or for any commercial use.

d. **We** will not make any payments for any claims for which **you** are entitled to be paid under any other insurance except for any additional sum which is payable over and above such other insurance.

## III. GENERAL CONDITIONS

1) Premium is payable monthly by Direct Debit or by charge to **your** credit card, according to the option selected by **you** on the application. This **policy** is continued until cancelled, and will renew automatically each month as long as premium payments are current. When **you** have not paid the premium, **we** may cancel this **policy. We** will let **you** know at least twenty (20) days before the date cancellation takes effect. No coverage will be provided for any claim with a date of **veterinary treatment** between the premium due date and the cancellation date, unless the premium payments are current.

2) **You** may cancel **your policy** by notifying **us** in writing via regular mail, fax or email at least fourteen (14) days in advance of **your** next premium payment.

3) **You** must be the owner of each **pet** shown on the **pet schedule**. If the **pet** owner dies, becomes unable to care for any insured **pet**, or passes the ownership of any insured **pet**, the **coverage** will continue without interruption, if approved in writing by **us**, subject to all other terms and conditions of this **policy**.

4) A **pet** is covered under this **policy** only while the **pet** is in the United States of America, or temporarily away in Canada.

5) **You** must agree to implement all reasonable means possible in the care and protection of **your pet**. **You** further agree to protect **your pet** from aggravation or recurrence of the **injury** /or **illness**.

6) This **coverage** is not transferable to other **pets**. All new **pets** are subject to a new application and your monthly payment will increase.

7) **You** are entitled to increase the **deductible** or **coinsurance** amount applicable to **your pet** at any time. This request must be made in writing and will become effective the month following approval by **us**. **You** may apply to lower the deductible or **coinsurance** amount applicable to **your pet** provided you have not previously filed a claim with **us** for that **pet**. This request must be in writing and will become effective the month following approval by **us**.

8) Notice of loss must be given by either **you** or **your** agent.

9) The loss is payable within sixty days after completion of the claim form, unless applicable state law provides for a shorter period.

10) In order to process a claim, **you** must allow **us** to contact **your** present and previous **veterinarian(s)** and provide **us** with the necessary authority to obtain any information **we** may require. In the event information relating to the history of the **pet** is missing or incomplete, the claim will not be processed. **You** must also agree to submit the **pet** to examination, if **we** require, by a **veterinarian** selected by **us**.

11) In the event of any disagreement between **you** and **us** with regard to a claim, the matter will be referred to a **veterinarian** of **ours**. If the matter is not resolved, an independent third party **veterinarian** shall be appointed by **us**. This independent third party **veterinarian's** decision shall be final and binding on all parties.

12) Every action or proceeding against **us** for the recovery of any claim under or by virtue of this contract is absolutely barred unless commenced within one year after the loss or damage occurs or unless state law requires a longer period.

## IV. ADDITIONAL CONDITIONS

**1) MISREPRESENTATION AND FRAUD** – This **policy** will be voided if **you** have concealed or misrepresented any material fact or circumstance concerning this insurance or the **pet** covered. **We** do not provide **coverage**, for an insured who has intentionally concealed or misrepresented any such facts or circumstances before or after a loss.

**2) CANCELLATION**

a. **We** may cancel this **policy** if **we** do not receive a monthly premium from **you** when the premium is due. In such a case a written notice will be sent to **you** at **your** last email address known to **us**. We will provide at least (20) days notice of our intent to cancel. The notice will be in accordance with the provisions of **III. GENERAL CONDITIONS** 1). Otherwise, **we** may cancel this policy by providing **you** at least ninety (90) days written notice.

b. **You** may cancel this **policy** at any time by notifying **us** in writing via regular mail, fax or email. This is in accordance with the provisions of III. **GENERAL CONDITIONS** 2).

**3) STATE LAW** – When this **policy's** provisions are in conflict with the statutes of the state in which this **policy** is issued, the provisions are amended to conform to such statutes.

**4) ENTIRE CONTRACT** – This **policy**, the **declarations page**, and any attached endorsement constitutes the entire agreement between **you** and **us**.

5) **FREE LOOK PERIOD** - If **you** are not satisfied with this **policy** within thirty (30) days of the **Policy Effective Date**, **you** may cancel **your** insurance. **We** will refund **your** premium in full, as long as **you** have not submitted a claim.

## V. DEFINITIONS

The following defined words or phrases in the **policy** are printed in bold type and have the following meanings, unless a different meaning is described in a particular coverage or endorsement.

1) **Accident.** An unexpected and unintended event.
2) **Clinical Examination.** A thorough examination performed by a licensed and registered **veterinarian** encompassing all body systems of the **pet**. Examination can also be referred to as "full physical, physical consultation, full examination or veterinary examination."
3) **Clinical Symptoms.** Any manifested anomaly in, or deviation from the regular healthy state or function of a **pet**, including behavioral traits. **Clinical Symptoms** include any anomaly that is readily detectible by a thorough and complete **clinical examination**.
4) **Coinsurance. Your** portion of the cost of insured **veterinary treatment for your pet** before any **deductible** is applied. **Your pet's coinsurance** amount is shown as "Your Share" on the **pet schedule** of the **declarations page**.
5) **Condition.** Any manifestations of **clinical symptoms** consistent with a diagnosis or diagnoses, regardless of the number of such symptoms or areas of the body affected.
6) **Coverage.** The insurance protection described in this **policy** form and on the **declarations page.**
7) **Coverage Term.** A twelve (12) month period that begins with the effective date of **coverage** and continues for each twelve (12) month period thereafter.
8) **Declarations Page.** A written document comprising part of this **policy**, which identifies the insured, the **policy** number, and the insured **pet schedule** with the **coverage** options selected and Lifetime Limit provided.
9) **Deductible.** The amount **you** must first pay with respect to the cost of insured **veterinary treatment** for **your pet** after **your pet's coinsurance** portion has been applied.
10) **Dental Health Care.** The care required to maintain dental hygiene for **your pet.** This includes cleaning, brushing, scaling, polishing, extractions and reconstructions.
11) **Diagnostic Tests.** Tests used to determine the overall health of **your pet. Diagnostic tests** can be used as a way to detect certain abnormalities. It can also validate the current health of **your pet**, or help to evaluate an older **pet** more thoroughly before problems surface.
12) **Hospitalization.** Charges for boarding **your pet** at a veterinary clinic as required by your **veterinarian** to deliver nursing care, administer **medication** to or monitor **your pet.**
13) **Illness.** Sickness, disease or any other changes to **your pet's** normal healthy state; or any **condition** other than **your pet's** normal healthy state.
14) **Injury** or **Injuries.** Physical harm or damage to **your pet** arising from normal activity or an **accident**.
15) **Medically Necessary.** Medical services, supplies or treatments provided by a **veterinarian** to treat covered **pets** which are:
    a. consistent with symptoms or diagnosis;
    b. appropriate and meet generally accepted veterinary practice standards;
    c. not primarily for the convenience of the **pet parent, your veterinarian** or other providers; and
    d. consistent with the most appropriate supply or level of services which can safely be provided to the **pet.**
16) **Medication.** Any veterinary recommended **medications** prescribed by **your veterinarian** and approved by the Food and Drug Administration (FDA) for veterinary use.

17) **Neutering.** Orchiectomy, or surgical removal of the testicles.

18) **Pet** or **Pets.** A domestic cat or dog that is owned for companionship or as a help dog. **Pet** or **Pets** do not include a domestic cat or dog that is involved in activities other than companionship or helping, including, but not limited to, racing, breeding, law enforcement, guarding or commercial activities.

19) **Pet Parent.** The owner of the **pet,** including owner's spouse or partner.

20) **Pet Policy Effective Date.** 12:01 a.m. of the day following the date you enroll **your pet**, as shown on the **pet schedule** of the **declarations page**, subject to the waiting periods as defined in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.,** and **1) d.**

21) **Pet Schedule.** The table shown on the **declarations page** that identifies the **pet policy effective date**, policy number and **coverage** options related to a specific insured **pet.**

22) **Policy.** The terms and conditions and most recent **declarations page** that includes any endorsements that apply.

23) **Policy Effective Date.** 12:01 a.m. of the day following the date Shown in the Declarations, subject to the waiting periods as defined in **II. EXCLUSIONS & LIMITATIONS 1) b., 1) c.,** and **1) d.**

24) **Pre-existing conditions** means:

    a. **Illness** or **condition** which developed or redeveloped prior to the **pet policy effective date**;

    b. an **injury,** or recurrence of an **injury,** as a result of an **accident** that occurred prior to the **pet policy effective date**; or

    c. any **condition** or complication resulting from an **illness** that developed, or any **injury** as a result of an **accident** that occurred prior to the **pet policy effective date.**

25) **Spaying.** Ovariohysterectomy, or resection of the ovaries and uterus.

26) **Supplies.** Any item that is **medically necessary**, as determined by the **veterinarian**, that is safe and effective for its intended use, and that omission would adversely affect the insured **pet.**

27) **Surgery** or **Surgeries.** Any procedure that treats diseases or **injuries** by operative manual and instrumental treatment.

28) **Vaccination.** The administration of an industry-recognized commercial vaccine by a registered licensed **veterinarian.** The vaccine must be in accordance with the manufacturer's recommendations, following a complete **clinical examination,** for prevention of disease.

29) **Veterinarian.** A properly licensed and registered **veterinarian** in active practice in the area where the **pet** is treated or examined. **Veterinarian** shall not include **you** or a member of **your** immediate family.

30) **Veterinary Examinations Fees.** Fees charged for the professional opinion of a **veterinarian.** Also referred to as consultation, examination, referral, and recheck fees.

31) **Veterinary Treatment** means:

    a. X-rays;

    b. Laboratory and **diagnostic tests**;

    c. **Medication**;

    d. **Surgeries;**

    e. **Supplies;**

    f. **Hospitalization;**

    g. Euthanasia; and

    h. Nursing care;

    provided by a licensed **veterinarian** and their staff under direct supervision.

32) **Waiting Periods.** 15 days from the **Pet Policy Effective Date** for **accidents** and **illness** and 12 months from the **Pet Policy Effective Date** for **illness** related to hip dysplasia.

33) **Working Pets.** Any **pet** involved in activities other than companionship or helping, including, but not limited to, racing, breeding, law enforcement, guarding or for other commercial use.

34) **Your Pet.** The dog or cat named in the **pet schedule** of the **declarations page**.